Nos. 96-075 and 96-356

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 14

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DENNIS WAYNE STUCKER,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-first Judicial District,

In and for the County of Ravalli,

Honorable John W. Larson, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

David E. Stenerson, Attorney at Law, Hamilton, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Pamela P. Collins,

Assistant Attorney General, Helena, Montana

George H. Corn, County Attorney, Hamilton, Montana

John P. Connor, Jr., Assistant Attorney General and Special Deputy

County Attorney, Helena, Montana

Submitted on Briefs: December 17, 1998

Decided: January 28, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Dennis Wayne Stucker (Stucker) appeals his conviction before the Twenty-first Judicial District Court, Ravalli County, of obstructing justice by accountability. Stucker also appeals that court's revocation of his deferred sentence upon a finding of probation violations. We affirm.**

## ISSUES

**¶2. 1. Was there sufficient evidence presented at trial to support the jury's verdict that Stucker was guilty of the offense of obstruction of justice by accountability?**

**¶3. 2. Was Stucker denied a fair trial as a result of the admission of the testimony of Calvin Greenup regarding the goals and beliefs of the members of the Ravalli County militia movement?**

**¶4. 3. Did the District Court err in denying Stucker's motion to suppress evidence discovered by Stucker's probation officers during a search of his home on the grounds that there was no reasonable basis for the search?**

## BACKGROUND

**¶5. Stucker was charged by Information before the Twenty-first Judicial District**

Court, Ravalli County, with the offense of obstruction of justice by accountability, a felony, pursuant to § 45-7-303(2)(c) and § 45-2-302, MCA. The Information alleged that Stucker knowingly aided and abetted in the commission of the offense of obstruction of justice by participating in the efforts of Scott Greenup, Pete Miller and Ben Schneider to provide means of avoiding discovery or apprehension to Calvin Greenup (Calvin), a known offender. A jury trial was held, and Stucker was found guilty as charged.

¶6. The events which culminated in Stucker's conviction for obstruction of justice by accountability occurred on the evening of April 12, 1995, at Calvin's ranch home near Darby, Montana. Stucker, who had become acquainted with the Greenup family in March 1995, arrived at the Greenup home on April 12th at the behest of Calvin's son, Scott Greenup (Scott). Sometime earlier that day, Scott had telephoned Stucker to request his assistance in transporting Calvin and the Greenup family from the ranch. Scott explained to Stucker that his family believed a raid by law enforcement officers was imminent and that they were in fear for their lives if they remained in the area.

¶7. Stucker arrived at the Greenup home at approximately 10:30 p.m. in a four-wheel drive pick-up truck outfitted with a camper top. Scott met him at the foot of the driveway. Stucker backed his vehicle up to the door of the Greenups' house and several people, including Stucker, began loading camping gear, firearms and ammunition into the back of the vehicle. Scott had instructed the party to move quickly, as there were people waiting to meet them at the top of Lost Trail Pass near the Idaho border.

¶8. Once the vehicle was loaded, Calvin, Calvin's wife Linda, Lynne and Pete Miller, and the Miller children positioned themselves in the back of Stucker's pick-up along with the loaded gear. Scott joined Stucker in the cab of the vehicle, and the party proceeded south down Highway 93 toward the Idaho border. Stucker's vehicle was accompanied en route by two or three other vehicles occupied by friends and supporters of the Greenup family.

¶9. At the top of Lost Trail Pass, Stucker stopped his vehicle and his passengers alighted. Waiting at this point were two new vehicles into which the cargo from Stucker's truck was transferred. The Greenups and the Millers were also transferred to the waiting vehicles. The newly loaded vehicles then departed, thus successfully

transporting the Greenups and Millers over the border into Idaho. Scott, Stucker, and the rest of the escort party returned home.

¶10. Outstanding arrest warrants had been issued against several members of the departing party prior to their flight out of Montana: a warrant against Calvin had been issued for operation of a game farm without a license; a warrant against Lynne Miller had been issued for obstructing a peace officer; and a warrant against Pete Miller had been issued for intimidation. There was also an outstanding arrest warrant against Scott for bail jumping, although Scott did not depart the State with the rest of his family on April 12th. The jury found that Stucker had been aware of the existence of the warrant against Calvin and subsequently convicted him of obstruction of justice by accountability for assisting with the removal of Calvin and the rest of the party into a neighboring jurisdiction.

¶11. At the sentencing hearing before the District Court, Stucker was sentenced to a deferred sentence of six years imprisonment. His probationary period was made subject to a number of conditions, including the prohibition of possession of firearms or other deadly weapons. On April 16, 1996, the Adult Probation and Parole Division of the Department of Corrections and Human Services filed a report of probation violation alleging that a catalog of various firearms and ammunition had been found at Stucker's residence during a search by probation officers.

¶12. A hearing was held before the District Court at which Stucker appeared represented by counsel. Stucker filed a motion to suppress the evidence produced during the probationary search on the grounds that the search was unreasonable. The District Court denied Stucker's motion and found Stucker in violation of the conditions of his probation. The District Court entered a judgment revoking Stucker's deferred sentence, imposing a ten-year suspended sentence, and modifying the terms of Stucker's probation.

¶13. Stucker appeals both his conviction and the ruling of the District Court denying his motion to suppress evidence at the revocation hearing. At the direction of this Court, the appeals were consolidated for briefing, and both will be addressed here.

## DISCUSSION

¶14. Was there sufficient evidence presented at trial to support the jury's verdict that Stucker was guilty of the offense of obstruction of justice by accountability?

**¶15. We review a District Court's conclusions of law to determine if they are correct.** *State v. Ahmed* **(1994), 278 Mont. 200, 207, 924 P.2d 679, 683. We review the sufficiency of the evidence to support a jury verdict in a criminal case to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.** *State v. Lantis*, **1998 MT 172, ¶ 32, 966 P.2d 147, ¶ 32, 55 St. Rep. 694, ¶ 32.**

**¶16. Stucker was convicted of obstruction of justice by accountability pursuant to § 45-7-303(2)(c) and § 45-2-302(3), MCA. The relevant portions of § 45-7-303(2)(c), MCA, read as follows:**

(1) For the purpose of this section "an offender" means a person who has been or is liable to be arrested, charged, convicted, or punished for a public offense.

(2) A person commits the offense of obstructing justice if, knowing a person is an offender, he purposely:

. . .

(c) provides an offender with money, transportation, weapon, disguise, or other means of avoiding discovery or apprehension . . . .

Section 45-2-302(3), MCA, states, in relevant part, that legal accountability for the conduct of another exists when "either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense."

**¶17. Stucker contends that insufficient evidence was presented at trial to allow a rational trier of fact to find him guilty of obstruction of justice by accountability because there was no evidence showing that members of the Greenup party fled Montana on the night of April 12th in an effort to avoid apprehension by law enforcement. In support of this contention, Stucker relies on the testimony of the Ravalli County Sheriff that although arrest warrants had been issued, he had made no attempt to arrest any member of the Greenup party because of the possibility that such a confrontation could lead to an armed engagement and subsequent loss of life.**

It is Stucker's position that because no arrest attempt had been made, the State failed to demonstrate that the aid given to the Greenup party constituted a means of avoiding either apprehension or discovery.

¶18. We find Stucker's argument contrary to law. As pointed out by the State, § 45-7-303(2), MCA, does not require direct interference with an arrest attempt before obstruction can occur. Stucker cites no precedent supporting his position that this kind of action is required, and we decline to inject such a prerequisite into the clear language of the statute. So long as the offender is liable to be arrested and the aid received constitutes money, transportation, weapon, disguise or other means of avoiding discovery or apprehension, obstruction of justice can occur, notwithstanding the lack of any attempt by law enforcement officials to exercise an existing warrant.

¶19. The evidence at trial clearly demonstrated that a warrant for Greenup's arrest was outstanding on the evening of April 12. Furthermore, the assistance provided to Calvin and the other members of the party was that of transportation, a form of assistance expressly defined by the statute as a possible means of avoiding discovery or apprehension. Because there is sufficient evidence to support the verdict of a rational trier of fact that the events of April 12th were in violation of § 45-7-303, MCA, we will not disturb this finding on appeal.

¶20. Stucker also argues that there was no evidence presented at trial refuting Stucker's testimony that he did not know of the existence of the warrant against Calvin at the time he participated in the events in question. Having no knowledge of the existence of the warrants, he argues, he could not have acted with the purpose of promoting or facilitating the obstruction of justice.

¶21. Because of the difficulties inherent in the State's burden of proving criminal intent, § 45-2-103(3), MCA, provides that "[t]he existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense." In this case, a plethora of circumstantial evidence was produced by the State to demonstrate that Stucker knew of the existence of the arrest warrant issued against Calvin prior to Stucker's involvement in the events of April 12th. Among such evidence was an April 11, 1995 article in a newspaper to which Stucker held a subscription reporting that an arrest warrant had been issued against Calvin and other members of the Greenup party; the testimony of one of the militia members

who participated in the April 12th departure that the existence of the warrants was common knowledge within the militia community, especially among friends who visited the Greenup home; Scott's testimony that Stucker knew on the evening of the 12th that Calvin could be arrested at any time and that the family was anticipating a raid by law enforcement that very night; and the testimony of the two undercover officers from the Montana Department of Justice who were present on the evening of April 12th that the existence of the warrants and the fact that various members of the departing party were wanted by law enforcement officers was openly discussed among the members of the removal operation.

¶22. Although there was evidence at trial, including Stucker's own testimony, that he was ignorant of the existence of the pending warrants against Calvin and the others, the fact that there is conflicting evidence before the jury does not make the prosecution's evidence supporting the commission of the charged offense insufficient to support a guilty verdict. *State v. Gladue*, 1999 MT 1, ¶ 40, ___ P.2d. ___, 56 St.Rep. 1. It was within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail. *State v. Bower* (1992), 254 Mont. 1, 8, 833 P.2d 1106, 1111. Viewing the evidence in the light most favorable to the prosecution, we hold that sufficient evidence existed from which a rational finder of fact could find that Stucker knew of the arrest warrant issued against Calvin, and that he acted on the night of April 12th with the purpose of promoting or facilitating the offense of obstruction of justice.

¶23. Was Stucker denied a fair trial as a result of the admission of the testimony of Calvin Greenup regarding the goals and beliefs of the members of the Ravalli County militia movement?

¶24. Our standard of review on the admissibility of evidence is whether the District Court abused its discretion in admitting or refusing to admit the disputed evidence. *Ahmed*, 278 Mont. at 206-07, 924 P.2d at 683.

¶25. The testimony of which Stucker complains was elicited from Calvin, who testified at Stucker's trial under a grant of immunity by the State. The substance of the testimony included Calvin's description of the militia's goal of "cleaning up" the State by arresting and trying government officials deemed to be in violation of their oaths of office and the constitution; a description of the system of "common law courts" administered by leading members of the militia in which government officials could be tried for acts deemed treasonous by militia members; and statements expressing a perceived need by members of the militia to arm and defend

**themselves against the government.**

**¶26. It is Stucker's position that this evidence was irrelevant, inflammatory and prejudicial, inappropriately causing the jury to associate his conduct with the unpopular views and reputations of the members of the county's militia movement. Stucker also asserts as error the prosecution's summation and characterization of Calvin's testimony during closing argument for reasons similar to those given above.**

**¶27. Our review of the trial transcript reveals that, despite Stucker's repeated assertions in his appellate brief that this testimony was admitted over his objection, Stucker made no objection to the admission of this evidence during the presentation of Calvin's testimony at trial. Section 46-20-104(2), MCA, and Rule 103(a)(1), M.R. Evid., establish the general rule that a timely objection must be made at trial in order to preserve an issue for appeal. Failure to lodge a timely objection to the introduction of this testimony constitutes a waiver of the objection and precludes raising the issue on appeal. Section 46-20-104(2), MCA; *State v. Schmalz*, 1998 MT 210, ¶ 13, ___ P.2d ___, 55 St.Rep. 889, ¶ 13.**

**¶28. Exceptions to the usual requirement that a timely objection be lodged are codified at § 46-20-701(2), MCA (1995), which reads:**

Any error, defect, irregularity, or variance which does not affect substantial rights must be disregarded. No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

¶29. None of the grounds set forth in § 46-20-701(2), MCA (1995), apply in this case to excuse Stucker's failure to object to Calvin's testimony at the time of trial. Additionally, neither party has advanced an argument compelling us to consider the admission of this evidence under the "plain error" doctrine of appellate review. *See State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215 (discussing the standards for and application of the doctrine of "plain error"). Therefore, we hold that the issue of the admissibility of Calvin's testimony regarding the goals and beliefs of the Ravalli County militia movement was waived by Stucker at the trial court level, and we decline to address it for that reason.

¶30. Did the District Court err in denying Stucker's motion to suppress evidence discovered by Stucker's probation officers during a search of his home on the grounds that there was no reasonable basis for the search?

¶31. We review a trial court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Roberts* (1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250.

¶32. A probation officer may search a probationer's residence without a warrant as long as the officer has reasonable cause for the search. Rule 20.7.1101(7), ARM; *State v. Burke* (1988), 235 Mont. 165, 169, 766 P.2d 254, 256, *citing Griffin v. Wisconsin* (1987), 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709. The reasonable cause standard requires substantially less than the probable cause standard under the Fourth Amendment because of the probationer's diminished expectation of privacy and the superior position of the probation officer to determine what level of supervision is necessary to provide rehabilitation and community safety. *Burke*, 235 Mont. at 169, 171, 766 P.2d at 256, 257. Whether reasonable grounds exist to conduct a probationary search is a factual inquiry which should be determined based on the totality of the circumstances. *State v. Beaudry* (1997), 282 Mont. 225, 230, 937 P.2d 459, 462.

¶33. Stucker contends that the probationary search of his residence was unreasonable because it was premised upon the observation by one of the officers of an empty ammunition box sitting on a table in Stucker's living room during a visit the previous day. Since the possession of ammunition was not forbidden under the conditions of his probation, Stucker argues that the presence of this empty box did not justify a search in which a number of weapons were discovered.

¶34. We disagree with Stucker's argument that the search was unreasonable, primarily because our review of the record demonstrates that the search was premised on more than the existence of the empty ammunition box. According to the testimony of the two probation officers who conducted the search, the observation of the empty ammunition box prompted a return visit on the following day, but did not immediately result in a search of Stucker's home. Rather, the officers requested that Stucker show them around the interior of the house. The officers testified that such a request is commonly made by probation supervisors for the purpose of obtaining a familiarity with the layout of the probationer's residence, to verify that the probationer lives there, to observe any contraband in plain view, and as a way of connecting socially with the probationer.

¶35. It was during the course of the voluntary tour by Stucker that the officers discovered two weapons cases in plain sight in the master bedroom. The officers requested Stucker to open the first case, and he complied. The case contained a bow, the possession of which was not prohibited under the terms of Stucker's probation. The second case, however, contained a semi-automatic shotgun, which did constitute contraband under the terms of Stucker's probation.

¶36. As a result of the discovery of the shotgun, the officers asked Stucker if any other weapons were located in the home and Stucker indicated that there were. A search of the closet in one of the spare rooms revealed the presence of a large number of firearms, knives, and ammunition, which were seized by the probation officers.

¶37. Based on the officers' discovery of a shotgun case in plain view in Stucker's bedroom, we hold that there were reasonable grounds for the officers to conduct the warrantless search of Stucker's residence to determine if additional weapons were located on the premises and that the District Court did not err in denying Stucker's motion to suppress the fruits of this search.

¶38. Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER