**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Lamont STOKES, Defendant–
Appellant.**

**No. 01–30170.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 2002.

Filed April 15, 2002.

Amended June 14, 2002.

Michael Donahoe, Assistant Federal Defender, Helena, MT, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, MT, for the plaintiff-appellee.

Before: POLITZ,* CANBY, and KLEINFELD, Circuit Judges.

## ORDER

The opinion filed in this case on April 15, 2002, slip op. at 5647 [286 F.3d 1132], is amended by adding a new footnote 2, to be indicated at the end of the first paragraph on slip op. at 5656 [286 F.3d at 1136] (immediately following "... no comparable escape clause"). The footnote is to state:

> The sentencing court has been held to have a duty under the ACCA to determine that a prior conviction for burglary was incurred under a statute (or, in rare cases, under jury instructions) containing the required elements of "generic" burglary. *See Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Tighe,* 266 F.3d 1187, 1196 (9th Cir. 2001). In the present case, however, Stokes has made no claim that the Illinois statute under which he suffered his prior convictions failed to define a classically "generic" robbery.

The petition for rehearing is DENIED.

## OPINION

CANBY, Circuit Judge:

This appeal presents two questions. The first is whether the search of a probationer's car, as part of a criminal investigation and based only on reasonable suspicion, violates the Fourth Amendment. The second question is whether the procedural distinctions between the Armed Career Criminals Act ("ACCA"), 18 U.S.C. § 924(e), and the federal three-strikes law, 18 U.S.C. § 3559(c), deprive an individual sentenced under the ACCA of equal protection and due process. We conclude that neither the search nor the statutory sen-

---

* Due to the death of Judge Politz on May 25, 2002, the order amending opinion and petition for rehearing was voted upon only by Judges Canby and Kleinfeld.

tencing framework violates the Constitution. We therefore affirm the judgment of the district court.

*Factual and Procedural Background*

Joseph Stokes worked at the Last Chance Casino in Helena, Montana. He had previously been convicted of various crimes, including robbery. At the time of his arrest in this case, Stokes was on probation for felony intimidation. His probation carried numerous conditions, including provisions that he not drink alcohol or possess firearms and that he "submit to searches of his person, vehicle, personal effects and residence by [his] supervising officer, at any time, without a warrant" if there was "reasonable cause" for the search. State law defines the "reasonable cause" standard as being "substantially less than the probable cause standard under the Fourth Amendment." *State v. Stucker*, 293 Mont. 123, 973 P.2d 835, 841 (1999).

On December 23, 1999, Stokes and a co-worker at the casino, Luke Hayes, took an outdoor cigarette break together. Hayes knew Stokes by sight, but did not know his last name. Hayes showed Stokes two guns Hayes had in his car. Later that same day, Hayes looked out a window of the casino and saw Stokes putting something into the trunk of his car. Hayes heard the sound of metal hitting metal. When Hayes went to his car after work, he found that the guns were missing. He reported the theft to the police, identifying Stokes as a black man with a shaved head and a lot of tattoos. He may have said the man's name was Joe or Joey or Joe–Joe.

The police officer who took the report concluded from his personal knowledge that the tattooed man was Stokes. The officer contacted Stokes' probation officer, Lee Blazer, who confirmed that Stokes worked at the casino. Blazer asked that the police locate Stokes and contact Blazer when they had.

The following night, a police officer was called to a convenience store with a report that someone was sleeping in a vehicle. When the officer arrived, the reported car was still in the store parking lot but no one was in it. The police officer checked the registration tags and discovered the car belonged to Stokes. When Stokes returned to the car, the officer smelled alcohol on his breath, and Stokes admitted to having had a couple of drinks. Stokes stated that his car had broken down. The officer called probation officer Blazer, who came, searched the car, and found a gun which turned out to be one of the stolen guns. Stokes was arrested for possession of the firearms.

Stokes moved to suppress the evidence from the search, arguing that the search was not for probationary purposes but was part of a criminal investigation, requiring probable cause to support the search. The District Court denied the motion. A bench trial was then held on stipulated facts. The judge found Stokes guilty of being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g). Because Stokes had previous qualifying convictions, he was sentenced to 240 months of incarceration under 18 U.S.C. § 924(e), the ACCA. Stokes appeals the denial of his suppression motion and challenges the constitutionality of the sentencing enhancement under 18 U.S.C. § 924(e).

 We review de novo the denial of a motion to suppress evidence. *United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir.2001). We also review de novo the constitutionality of statutes. *United States v. Rambo*, 74 F.3d 948, 951 (9th Cir.1995). Where, as here, a statutory scheme does not burden the exercise of a fundamental right, we review a defendant's equal protection claim to determine only

whether Congress had a rational basis for its actions. *United States v. Hancock,* 231 F.3d 557, 566 (9th Cir.2000).

### Discussion

#### A. The Constitutionality of the Search

■ Stokes' probation form entitled the government to search him and his property "upon reasonable cause." The purpose of the search in this case was to investigate criminal activity, not to verify Stokes' compliance with his probation conditions. Stokes contends that a probation search as part of a criminal investigation is per se unreasonable. For this proposition, Stokes relies on *Latta v. Fitzharris,* 521 F.2d 246, 249–50 (9th Cir.1975) (en banc).

*Latta* does not directly support Stokes' argument, however; it sustained a probation search, although it did recognize that probationers were not placed "at the unfettered mercy of the parole authorities." *Id.* at 250. A subsequent line of cases in this circuit, however, did support the proposition that a probation search that was a subterfuge for a criminal investigation violated the Fourth Amendment. *See, e.g., United States v. Johnson,* 722 F.2d 525, 528 (9th Cir.1983); *United States v. Merchant,* 760 F.2d 963, 969 (9th Cir.1985); *United States v. Ooley,* 116 F.3d 370, 372 (9th Cir.1997).

The Supreme Court put a stop to this line of reasoning, however, in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). *Knights* overturned a ruling of this court invalidating a search of a probationer on the ground that the search was not for probationary purposes, but was a mere subterfuge for a criminal investigation. *See*

*United States v. Knights,* 219 F.3d 1138, 1145 (9th Cir.2000). The Supreme Court upheld the search as supported by reasonable suspicion in light of the totality of the circumstances, and stated that "there is no basis for examining official purpose." [1] *Knights,* 122 S.Ct. at 593. Accordingly, our circuit's line of cases holding searches of probationers invalid on the ground that they were subterfuges for criminal investigations is, in that respect, no longer good law.

■ In the light of the totality of the circumstances, "with the probation search condition being a salient search condition," *id.* at 591, the search of Stokes' vehicle was reasonable. The search condition on Stokes' probation form stated that, if there was reasonable cause, Stokes was required to permit his probation officer to search him and his property "at any time, without a warrant." The search condition does not mention anything about the purpose of the search or limit "reasonable cause" to violations of probation conditions. *See United States v. Knights,* 122 S.Ct. at 590. The explicit search provision diminished Stokes' expectation of privacy. *See id.* at 592. Moreover, as a probationer, Stokes was "more likely than the ordinary citizen to violate the law." *Id.* (citations omitted). Therefore, the probation officer was entitled to carry out a search of Stokes' vehicle with no more than reasonable suspicion that he was engaged in criminal activity. *See id.*

■ The standard of reasonable suspicion was clearly met. Hayes had informed the police that he had shown the guns to Stokes, and had seen Stokes place some-

---

1. The Supreme Court recognized a "limited exception of some special needs and administrative search cases," but stated that otherwise it had been unwilling to examine the " 'actual motivations of individual officers.' " *Knights,* 122 S.Ct. at 593 (quoting *Whren v.*

*United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). We find unpersuasive Stokes' bare assertion that his search falls within the "special needs" exception; nothing in *Knights* supports that view.

thing in the trunk of his car. Stokes was sufficiently identified to the officer, who knew him, and knew of Stoke's history of theft. All of this was known to the probation officer, Blazer, when he · searched Stokes' vehicle, as was the fact that Stokes had been drinking.

The district court accordingly did not err in denying the motion to suppress, and we affirm its ruling.

### B. *The Constitutionality of the Armed Career Criminals Act*

■ Stokes challenges the constitutionality of the ACCA, 18 U.S.C. § 924(e), contending that it violates due process and equal protection when compared with the federal three-strikes law, 18 U.S.C. § 3559(c)(3). His contention concerns the manner in which each statute gives effect to prior convictions.

The ACCA provides for a fifteen-year mandatory minimum prison sentence when a qualifying defendant convicted of possessing a firearm has three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The three-strikes law provides mandatory life imprisonment for persons previously convicted of two violent felonies or one violent felony and a serious drug offense. 18 U.S.C. § 3559(c)(1)(A). The three-strikes statute, however, provides an escape clause for two types of prior offenses: (1) when a prior conviction is for robbery, it may not serve as a basis for the increased sentence if the defendant establishes by clear and convincing evidence that the rob-

bery did not involve use or threat of use of a dangerous weapon and did not result in death or serious bodily injury; and (2) when a prior conviction is for arson, it may not serve as a basis when the defendant establishes by clear and convincing evidence that the arson posed no threat to human life and the defendant reasonably believed that it did not pose such a threat. 18 U.S.C. § 3559(c)(3)(A) & (B). The ACCA contains no comparable escape clause.[2]

Stokes contends that, in providing an escape clause in the three-strikes law but not in the ACCA, Congress violated his right to equal protection of the laws.[3] He asserts that he was prepared to prove that his prior robbery conviction did not involve a weapon or result in death or injury. We reject Stokes' challenge, because we conclude that he is not similarly situated to persons convicted under the three-strikes law, and Congress had a rational basis for treating the two groups differently.

Congress enacted the Armed Career Criminal Act to address the problem of "career offenders—those who commit a large number of fairly serious crimes *as their means of livelihood*, and who, because they possess weapons, present at least a potential threat of harm to persons." *Taylor v. United States*, 495 U.S. 575, 587–88, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (emphasis added). Following this logic, Congress included only robbery and burglary in the early versions of the act. *Id.* at 581, 110 S.Ct. 2143. These are

---

**2.** The sentencing court has been held to have a duty under the ACCA to determine that a prior conviction for burglary was incurred under a statute (or, in rare cases, under jury instructions) containing the required elements of "generic" burglary. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Tighe*, 266 F.3d 1187, 1196 (9th Cir.2001). In the present case, however, Stokes has made no

claim that the Illinois statute under which he suffered his prior convictions failed to define a classically "generic" robbery.

**3.** Stokes also asserts that the distinction violates his right to due process, but his argument is directed entirely to equal protection. We therefore confine our analysis to the equal protection claim.

crimes in which there is an inherent potential for harm. *Id.* at 588, 110 S.Ct. 2143. There was no proposal to "limit the predicate offense to some special subclass ... that might be especially dangerous." *Id.* From the ACCA's inception and throughout its expansion to other crimes, Congress took a categorical approach to the predicate offenses, attempted to "capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." *Id.* at 588–90, 110 S.Ct. 2143. Thus, the focus of § 924(e) is to discourage and punish crimes that share two characteristics: the probability that they are an individual's means of livelihood and potential dangerousness. The absence of actual or threatened violence during a given robbery is not particularly relevant to Congress' objectives in passing this law. *See id.* at 601, 110 S.Ct. 2143. It was, therefore, rational for Congress not to provide an escape clause for such instances.

The three-strikes law has different objectives and effects. It is aimed directly at violent crime itself; it attempts to take those individuals who repeatedly commit violent crimes—for whatever reason—off the streets forever. H.R.Rep. No. 103–463, at 3 (1994), *available at* 1994 WL 107574. In light of the difference of purpose between these two statutes, it is reasonable that Congress would provide an opportunity for a defendant to challenge whether a particular robbery involved violence under the three-strikes law, but not under the ACCA. In addition, the enhancement under the three-strikes law is more severe; it is mandatory life imprisonment. And only two prior qualifying felonies trigger the enhanced sentence, while three prior convictions of serious felonies are required under the ACCA. These more severe effects alone provide a rational basis for Congress to permit relief from the three-strikes law with regard to certain felonies that were non-violent in fact. *See Massie v. Hennessey,* 875 F.2d 1386, 1389 (9th Cir.1989) (no equal protection violation in providing automatic appeal for murderers sentenced to death but not for murderers sentenced to life imprisonment).

Because the purposes and effects of the two statutes are different in characteristics relevant to the escape clause, Congress could rationally provide such a clause in the three-strike statute but not in the ACCA. The two groups of offenders are not similarly situated and may be treated differently without violating the equal protection clause because the difference is "reasonable, not arbitrary, and [rests] upon some ground of difference having a fair and substantial relation to the object of the legislation." *Komarenko v. INS,* 35 F.3d 432, 435 n. 1 (9th Cir.1994) (quoting *Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975)). Stokes' equal protection challenge accordingly fails.

*Conclusion*

The judgment of the district court is **AFFIRMED.**