No. 03-812

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 201

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JEAN PAUL WEIGAND,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                       In and for the County of Yellowstone, Cause No. DC 2002-885
                       The Honorable Russell C. Fagg, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Matthew C. Claus, Attorney at Law, Bozeman, Montana

        For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Joslyn M. Hunt, Assistant
        Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County
        Attorney, Rod Souza, Deputy County Attorney, Billings, Montana


                       Submitted on Briefs:  June 15, 2005

                             Decided:   August 16, 2005


Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Following a jury trial in the Thirteenth Judicial District, Yellowstone County, Jean Paul Weigand (Weigand) was convicted of criminal endangerment for placing his young son in danger during a domestic dispute.  He appeals.  We affirm.

## ISSUE

¶2     The only issue on appeal is whether the jury had sufficient evidence to convict Weigand of the offense of criminal endangerment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     At approximately 2:00 a.m. on November 24, 2002, three Billings police officers responded to a 9-1-1 domestic dispute call.  They were informed by dispatch that a woman named Crystal wanted a man removed from her house.  The dispatch officer also told the police that a knife, and possibly a gun, were involved.  Upon arriving at the scene, the officers witnessed, through a glass door, a man and a woman engaged in a loud, profanity-riddled argument.  The man, later identified as Weigand, was pacing in the kitchen and holding a young boy, almost four years old, in his right arm.  The child was later identified as K.W., Weigand's and Crystal's child.  K.W. was held in a way this his chest was against Weigand's chest.  While assessing the situation before announcing their presence, the officers saw a large kitchen knife, blade upwards, protruding from Weigand's back pocket.  Another broken knife lay nearby on the kitchen floor.

2

¶4 Crystal noticed the officers at the front door and went to the door. Weigand, upon seeing the police, shifted the child to his left arm and removed the knife from his pocket as he followed Crystal to the door. When Crystal opened the door, the officers forcibly removed her from the home and began to loudly and repeatedly order Weigand to drop the knife. Weigand refused, told the officers they would have to shoot him, and continued advancing toward the officers with knife in hand and carrying his child. Weigand stood in the threshold of the house with the door open telling the officers to leave the property. The officers continued to tell him to put down the knife and Weigand repeatedly told them he would not and that they should shoot him. By this time, the officers had unholstered their weapons and had them in the "low ready" position pointed toward Weigand.

¶5 Weigand advanced toward one of the officers, Kruger, until Kruger felt cornered on the porch and was forced to jump over a porch rail. Weigand, using the steps, then followed Kruger down into the yard and for several minutes, Weigand and the three officers screamed loudly at each other across the dark yard. Crystal, who had become uncooperative with the officers upon seeing Weigand confront the officers with a knife while still holding her son, was being confined in one of the squad cars for her safety and to keep her from interfering in the officers' attempt to disarm Weigand. She, too, was screaming at Weigand during this time to put down the knife and her child. Tensions, by this time at a high level, continued to escalate with the noise and confusion of the situation taking place in the dark. The officers continually ordered Weigand to drop the knife and put down the child. Rather than comply

3

with either order, Weigand repeatedly challenged the officers to shoot him. Weigand backed Kruger against a fence at which time Kruger jumped the fence and circled around the house. By the time he got back to the front of the house, Weigand had taken K.W. and gone inside and closed the door behind them. The SWAT team arrived shortly thereafter and after a few hours of negotiations, Weigand allowed K.W. to leave the house and go to Crystal. At some time later, Weigand surrendered.

¶6     On November 26, 2002, the State filed an Information charging Weigand with felony Assault on a Peace Officer and felony Criminal Endangerment. He entered a plea of not guilty to both charges and a trial was conducted on April 10, 2003, through April 16, 2003. At the conclusion of the trial, the jury found Weigand guilty of criminal endangerment but could not reach a unanimous verdict on the assault charge. The District Court sentenced Weigand to eight years in Montana State Prison. Weigand filed a timely appeal.

## STANDARD OF REVIEW

¶7     We review a question on the sufficiency of the evidence in a criminal matter to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *State v. Field*, 2005 MT 181, ¶ 15, ___ Mont. ___, ¶ 15, ___ P.3d ___, ¶ 15 (internal citations omitted). It is within the province of the jury to weigh the evidence based on the credibility

4

of the witnesses and determine which version of events should prevail. *State v. Stucker*, 1999 MT 14, ¶ 22, 293 Mont. 123, ¶ 22, 973 P.2d 835, ¶ 22 (citation omitted).

## DISCUSSION

¶8 Weigand maintains that at no time did he threaten Crystal, his child, or the officers with the knife. In fact, he contends that when the officers first told him to drop the knife, he put the knife to his own head and instructed the officers to shoot him. While, during this entire altercation, Weigand held K.W. in his left arm against his chest, Weigand denies that he ever used the child as a shield. Rather, he maintains he was simply carrying his son who had awakened and was crying because his parents were fighting. He asserts he was trying to calm the child. Weigand insists he did not know that he created a risk to K.W., and if such a risk existed, it came from the police officers, not from Weigand.

¶9 Weigand asserts that the elements of the offense of criminal endangerment set forth at § 45-5-207, MCA, have not been satisfied. Section 45-5-207, MCA, states, in relevant part: "(1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment." Weigand posits that there was no "substantial" risk of death or serious bodily injury to his son because the three officers on the scene all testified that they would not have shot Weigand while he was holding the child. Because, according to the officers' testimony, no risk existed, Weigand argues he did not "knowingly" expose the child to risk.

5

¶10    Finally, Weigand maintains that the officers' testimony that they would not have shot Weigand or the child amounted to "judicial admissions," prohibiting the State from proffering testimony to the contrary.   He also points out that, during the State's closing argument, the State claimed that Weigand knew the officers would not shoot his child.  As a result of these "judicial admissions," Weigand claims the jury did not have sufficient evidence to conclude the elements of criminal endangerment had been satisfied; therefore, the conviction should be reversed and the charges against him dismissed.

¶11    The State counters that sufficient evidence existed to support the jury's finding that Weigand was guilty of the offense of criminal endangerment.  Namely, while holding his child close to his chest, Weigand drew a knife on the officers as he commanded them to shoot him.  He steadfastly refused to put K.W. down while engaging in a tense, dangerous altercation with officers who had their firearms aimed at him.  According to officer testimony, Weigand repeatedly pointed, or waved, the knife in the direction of the officers while taunting them to kill him.  Moreover, the jury heard evidence that K.W. served as a shield, protecting the area of Weigand's torso, the very center mass region at which officers are trained to shoot should such a shot become necessary.

¶12    We conclude that Weigand's behavior throughout this altercation--brandishing the knife, refusing to put the knife down despite innumerable orders to do so, loudly and repeatedly commanding the officers to shoot and kill him, and refusing to put K.W. down, either on his own accord or at Crystal's or the officers' urgent requests--created a highly

6

stressful, volatile, and dangerous encounter that, in turn, created a substantial risk of death or serious bodily injury to K.W. While Weigand argues that no risk existed because the officers testified that they would not shoot him while he was holding the child, Weigand could not have known at the time of the incident that the officers would so restrain themselves given his extreme and unreasonable behavior. Moreover, Kruger testified that he would have eventually shot Weigand had the situation merited it, even had Weigand still been holding K.W. This testimony both demonstrates the peril in which Weigand placed his son, and undercuts Weigand's "judicial admissions" argument.

¶13 As indicated above, when there is conflicting evidence presented, it is the jury's province to assess the credibility of and the weight afforded the witnesses' testimony. *Stucker*, ¶ 22. Viewing the evidence in a light most favorable to the prosecution, we conclude that sufficient evidence existed from which the jury could have found the essential elements of the crime of criminal endangerment beyond a reasonable doubt.

## CONCLUSION

¶14 For the foregoing reasons, we affirm Weigand's conviction.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

7