

DA 08-0009

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 423

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JAMES CURTIS LOCKE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 05-270
Honorable Douglas G. Harkin, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

        Edmund F. Sheehy, Jr., Attorney at Law, Missoula, Montana

      For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney; Suzy Boylan, Deputy County Attorney, Missoula, Montana


Submitted on Briefs:  November 6, 2008

Decided:  December 16, 2008

Filed:

_____
                   Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 James Curtis Locke (Locke) appeals from an order of the Fourth Judicial District Court, Missoula County, denying Locke's motion to withdraw his *Alford* plea to the offense of felony robbery. We affirm.

¶2 Locke presents the following issue for review:

¶3 Whether the district court properly denied Locke's motion to withdraw his *Alford* plea.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Officers responded to a report of a fight near the I-90 ramp at Van Buren Street in Missoula, Montana, on May 28, 2005. The report involved a juvenile panhandling for money. Officer Hebert encountered Locke and a female companion. Locke and the woman volunteered that nothing had happened and that they were not with "the boy." Officer Hebert had not mentioned a boy's involvement.

¶5 The boy's mother later approached the officers to inform them that Locke had assaulted her hearing-impaired son. Through his mother, the boy, age 13, stated that he had seen Locke and his female companion soliciting money from drivers at the interchange. He had decided to try the same thing. The boy had been standing at the interchange for a short time when a driver stopped and gave him five dollars. Locke approached the boy, punched him in the stomach with his left fist, and punched him in the lower back with his right fist. According to the boy, Locke then reached into the boy's pocket and took the five dollars that the driver had given him. Locke told the officers that the boy was lying. Locke contended

2

that the boy had swung first at him and that he had done nothing.

¶6     Locke initially pled "not guilty" to the felony robbery charge. Locke later informed the court, however, that he thought it was in his best interest to enter a plea of guilty and waive his rights. The court examined the information and affidavit and determined that a factual basis existed for the charge. The court accepted Locke's *Alford* plea. The court ordered a presentencing investigation (PSI) report and scheduled sentencing.

¶7     The court reviewed the plea agreement and the PSI before sentencing. The PSI indicated that Locke still professed his innocence. The court advised Locke of the three types of pleas, including the right to plead "not guilty." Locke again expressed his desire to enter an *Alford* plea. The court explained to Locke that his *Alford* plea meant that he was not admitting to the crime, but that he believed the State could prove that he had committed the crime. Locke indicated that he understood the meaning of his *Alford* plea. Locke further confirmed to the court that he understood that his *Alford* plea would result in a plea agreement that would allow him to receive a suspended sentence.

¶8     The court advised Locke that it would not revisit his original offense if it ever revoked his suspended sentence. Locke responded affirmatively to the court that he understood. The court advised the parties that it would follow the plea agreement. The court sentenced Locke to the Montana State Prison for five years. The court suspended Locke's sentence, imposed terms and conditions for the suspension, and released him on January 3, 2006.

¶9     The State petitioned to revoke Locke's suspended sentence on March 2, 2006, for

3

violations of the no alcohol and no bars condition of his suspended sentence. The State submitted a report of violations that included three infractions. Locke's first infraction occurred when he admitted on January 9, 2006, that he drank a beer on his way from court to the probation office. Locke further admitted that he drank the following three days before his arrest by his probation officer. Locke's second infraction happened when officers arrested him on February 7, 2006, for drinking in downtown Missoula. Locke agreed to a breathalyzer that revealed a blood alcohol content of 0.246. Locke's third infraction took place on February 23, 2006, when his probation officer arrested him for arriving drunk at a scheduled probation appointment. Locke again agreed to a breathalyzer that revealed a blood alcohol content of 0.222.

¶10 Locke admitted to the violations. The court revoked Locke's suspended sentence and sentenced him to a five-year commitment with the Department of Corrections (DOC). The court allowed credit for time previously served. The court remanded Locke to the custody of the DOC on March 14, 2006.

¶11 Locke timely filed a self-represented litigant petition for post-conviction relief in which he had alleged ineffective assistance of counsel. The District Court appointed counsel to represent Locke in the post-conviction proceeding. Locke filed a motion to withdraw his guilty plea. The District Court entered an order denying Locke's motion to withdraw his plea. Locke appeals.

**STANDARD OF REVIEW**

4

¶12    We review a defendant's motion to withdraw a guilty plea to determine if the guilty plea was voluntary. *State v. Phillips*, 2007 MT 117, ¶ 12, 337 Mont. 248, ¶ 12, 159 P.3d 1078, ¶ 12 (citations omitted). Our determination of whether a plea was voluntary involves a mixed question of law and fact that we review de novo. *Phillips*, ¶ 12.   We review the underlying factual findings to determine if they are clearly erroneous. *State v. Jones*, 2008 MT 331, ¶ 12, 346 Mont. 173, ¶ 12, 194 P.3d 86, ¶ 12 (citations omitted). We review the district court's interpretation and application of the law for correctness. *Jones*, ¶ 12.

## DISCUSSION

¶13    *Whether the district court properly denied Locke's motion to withdraw his Alford plea.*

¶14    Locke's *Alford* plea enabled him to enter a plea agreement that provided for a suspended sentence rather than the possible maximum term for felony robbery. Locke argues, however, that the court failed to establish a factual basis for his *Alford* plea when it reviewed only the information and affidavit. Locke claims that the court's failure to establish a factual basis to support the plea provides "good cause" to withdraw his *Alford* plea, as allowed by § 46-16-105(2), MCA.

¶15    The crux of the issue on appeal is not whether the court's colloquy with Locke established a factual basis to support Locke's *Alford* plea. The issue for review is whether Locke *voluntarily* entered an *Alford* plea. *Phillips*, ¶ 12 (emphasis added). Guilty pleas must be voluntary, knowing, and intelligent. *Phillips*, ¶ 24. A plea is voluntary only when the

5

defendant is aware fully of the direct consequences of the plea, including any commitments made to him by the court, the State, or his own counsel. *Jones*, ¶ 20.

¶16 The State filed the information and charged Locke with felony robbery. Locke appeared before the court, represented by counsel, and entered a plea of "not guilty." Locke assured the court that he understood the proceedings, consequences, charge, and his rights. Locke later appeared before the court and changed his plea to "guilty" by entering an *Alford* plea. Locke again confirmed to the court that he understood the proceedings, consequences, charge, and his rights. Locke conceded that the "facts in the complaint" established a factual basis for the charge and his plea. The court inquired whether Locke believed the *Alford* plea to be in his best interest as required by § 46-12-212(2), MCA. Locke responded affirmatively. Locke told the court that he believed that the jury would be swayed by the victim's hearing impairment and rule against him if his case went to trial.

¶17 The court addressed Locke's renewed claim of innocence at the sentencing hearing and explained to Locke that he had the right to choose "not guilty." The court further explained the meaning of his *Alford* plea and asked Locke if he understood. Locke responded affirmatively. The court asked Locke if he understood that his *Alford* plea allowed him to obtain the benefit of the plea agreement offered by the State. Locke again responded affirmatively.

¶18 Locke argues that our decision in *State v. Frazier*, 2007 MT 40, ¶ 21, 336 Mont. 81, ¶ 21, 153 P.3d 18, ¶ 21, required the District Court to elicit admissions from him regarding

6

the offense. *Frazier* addressed a claim of an involuntary guilty plea that required the Court to interpret subsection (1) of § 46-12-212, MCA. *Frazier*, ¶ 21. Locke, by contrast, professed his innocence throughout the proceedings. Section 46-12-212(2), MCA, nevertheless allowed the court to accept an *Alford* plea if a factual basis existed to support the charge and the plea would have been in Locke's best interest. This statutory procedure permits a defendant to plead guilty without actually admitting to the charge if a defendant has reviewed the evidence against him, if the defendant is capable of making a voluntary, knowing, and intelligent choice, and if the record contains strong evidence of guilt. *See* Commission Comments to § 46-12-212(2), MCA.

¶19 Nothing in the record indicates that Locke was not capable of making a voluntary, knowing, and intelligent choice. Locke repeatedly confirmed to the court that he had reviewed the evidence against him. He understood the claims made by the victim. Locke admitted to having been at the scene of the alleged assault. Locke expressly maintained his innocence, however, and thus the District Court had to look to other sources, independent from any admissions by Locke, for strong evidence to support the charge. The information and affidavit provided that source. Locke further informed the court that he felt the jury would believe the alleged victim's version of events. Locke opted to accept the State's plea agreement that resulted in a suspended sentence.

¶20 The Dissent contends that the court's review of the information and affidavit could not establish strong evidence of Locke's guilt in light of the fact that the affidavit "showed

nothing more than that Locke was at the scene of the crime." ¶ 29. The affidavit certainly placed Locke at the scene of the crime. The affidavit also asserted that Locke knew, without prompting, the reason for the police officers' arrival at the scene. Locke and his companion initially declared that nothing had happened and that they were not with "the boy." The officer had not yet mentioned the involvement of any boy.

¶21 The affidavit noted that the victim claimed that Locke had punched him and taken money from him. Nothing in the affidavit cast doubt upon the victim's credibility. As noted by the District Court, however, the affidavit cast doubt upon Locke's credibility. The affidavit asserted that Locke had changed his story from his initial claim that nothing had happened. Locke told officers that the "kid was lying" about having had money taken from him. Locke further told the officer that the kid had thrown the first punch. Like many criminal prosecutions, the case likely would have involved resolution of competing claims about what happened. The jury would have been required to weigh the evidence based on the credibility of Locke and the victim to determine which version of events should prevail. *State v. Stucker*, 1999 MT 14, ¶ 22, 293 Mont. 123, ¶ 22, 973 P.2d 835, ¶ 22.

¶22 Finally, the District Court anticipated Locke's eventual claim of an involuntary plea when it accepted Locke's *Alford* plea and imposed the suspended sentence recommended by the plea agreement. The following colloquy took place:

> Court: Throughout this Pre-sentence Investigation, you continually claim you are innocent of this charge. And, as you know, you have a choice when you enter a plea of - - you can enter a plea of not guilty, a plea of guilty, or a plea of nolo contendere, or an Alford plea. And the plea that you entered was an Alford plea - - that was the plea - -identified in here as an Alford plea - - or

8

nolo contendere - - and the plea that you entered was the type in which you said I am not admitting that I did these things but I think the State can prove that I did this crime. This crime being robbery. And in exchange for entering that plea, you received a plea agreement that is set out in this form. Do you understand that, as well?

Defendant: Yes, Your Honor.

Court: And I bring this - - I bring this matter up because frequently when people are on a sentence - - like you have here which calls for a suspended sentence - - and they are facing a revocation of that sentence because they violated probation, they want to go back to the original crime and say why should - - you shouldn't even be revoking me on this because I never did the crime in the first place. Okay. But I'm telling you now, if that occasion ever occurs, we don't discuss this original crime because it's history - -

Locke: I understand.

Court: - - and that's the way it is.

Locke: I understand.

Court: And I'm telling you upfront so, if you're back here again, I don't want to hear about it that I didn't really do this crime. Okay? Are we clear on that?

Locke: We're clear, Your Honor.

¶23 Despite the court's prescience, Locke brought the identical claim upon risk of revocation of his suspended sentence that he assured the court that he would not. It is well settled, however, that a district court's decision is presumed correct and an appellant bears the burden of establishing error. *State v. Buck*, 2006 MT 81, ¶ 30, 331 Mont. 517, ¶ 30, 134 P.3d, 53, ¶ 30. Locke has failed to establish that he entered his *Alford* plea involuntarily. Our review of the record clearly demonstrates that Locke voluntarily entered his *Alford* plea. *Phillips*, ¶ 12; *Jones*, ¶ 12. Locke's voluntary *Alford* plea disposes this issue as he has failed

9

to establish error on appeal. *Buck*, ¶ 30.

¶24    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson dissents.

¶25    I respectfully dissent from the Court's decision.

¶26    Section 46-12-212(2), MCA, sets out the requirements for the Court's acceptance of

an *Alford* plea. This statute provides:

> A defendant who is unwilling to admit to any element of the offense that
> would provide a factual basis for a plea of guilty may, with the consent of the
> court, enter a plea of guilty or may, with the consent of the court and the
> prosecutor, enter a plea of nolo contendere to the offense if the defendant
> considers the plea to be in the defendant's best interest and the court
> determines that there is a factual basis for the plea.

¶27    In *State v. Frazier*, 2007 MT 40, 336 Mont. 81, 153 P.3d 18, this Court set out the

standards for the trial court's determination of the factual basis for the plea when the

defendant enters an *Alford* plea. Specifically, we stated:

> If a defendant is "unwilling to admit to any element of the offense," the court
> must reject the guilty plea or treat the plea as an "Alford plea" and apply the
> stricter standards of § 46-12-212(2), MCA, which requires "strong evidence of
> guilt." *See Commission Comments* to § 46-12-212, MCA.

10

*Frazier*, ¶ 21.

¶28    Here, the District Court did not properly determine a factual basis for accepting defendant's *Alford* plea. The court failed to elicit admissions from Locke or consider any actual evidence from the State beyond the allegations in the affidavit and information, so as to determine Locke's involvement in the offense. The District Court failed to question Locke regarding any fact other than whether he understood what he was doing. Indeed, the trial judge did not ask Locke or the prosecutor a single question regarding the actual offense to which Locke was entering his *Alford* plea.

¶29    Rather, the court merely reviewed the information and the affidavit in support of the information and then accepted the plea, without more. The District Court's reliance on the information and supporting affidavit was insufficient to determine a factual basis establishing "strong evidence of guilt" for accepting the plea. The affidavit contained nothing more than a statement of probable cause for leave to grant the filing of the information. Moreover, the affidavit showed nothing more than that Locke was present at the scene of the crime. That fact, in turn and in and of itself, is insufficient to establish criminal responsibility. *State v. Flatley*, 2000 MT 295, ¶ 12, 302 Mont. 314, ¶ 12, 14 P.3d 1195, ¶ 12 ("Mere presence at the scene of a crime is . . . insufficient to establish criminal responsibility. *State ex rel. Murphy v. McKinnon* (1976), 171 Mont. 120, 125, 556 P.2d 906, 909."). Finally, the affidavit simply contained conflicting versions of the alleged offense.

¶30    While the Court goes to some length to justify reaching the Opinion's result, what is

11

most troubling is that the Court's approach simply ignores what we required in *Frazier*. The Court's decision here stands for the proposition that, now, all that § 46-12-212(2), MCA, requires is for the trial court to look at the affidavit and information; make factual judgments and credibility determinations from the mere allegations contained in those documents; and, from that cold paper review, determine the defendant's guilt. The trial judge never needs to ask either the defendant or the prosecutor a single question; the court needs no actual "evidence" of the defendant's guilt at all. If this suffices for the "strong evidence of guilt" that we required in *Frazier*, then it is impossible to envision what a lesser quantum of evidence might be.

¶31 Instead of perpetuating the façade of a precedent we choose not to follow, we should simply overrule *Frazier* and its progeny and avoid the pretense that these cases still stand for any principle of law which we will enforce in some future case.

¶32 I would follow our precedent. I conclude that the trial court's failure to elicit admissions from Locke or consider any actual evidence from the State beyond the conflicting allegations in the affidavit and information, in order to determine defendant's involvement in the offense, was clear error. The District Court's colloquy in accepting Locke's plea was insufficient as a matter of law to establish "strong evidence of guilt." The trial court's failure to elicit admissions or obtain other evidence of guilt violates the unambiguous requirements of § 46-12-212(2), MCA, as interpreted by this Court in *Frazier*.

¶33 Accordingly, I would reverse and remand, and direct the District Court to allow Locke

to withdraw his *Alford* plea.  From our failure to do so, I dissent.

/S/ JAMES C. NELSON