

DA 19-0632

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 171N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

GREGORY M. SMITH,

Defendant and Appellant.

FILED

JUL 13 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-18-348
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Suzanne C. Marshall, Suzanne Marshall Law, P.C., Bozeman, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney, Eric Kitzmiller, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:   April 7, 2021

Decided:   July 13, 2021

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Gregory J. Smith appeals from the jury verdict and sentencing order of the Eighteenth Judicial District Court, Gallatin County, committing Smith to the Department of Corrections following his felony conviction of stalking, in violation of § 45-5-220, MCA (2017). Smith argues the evidence presented at trial was insufficient to support his conviction. We affirm.

¶3 Smith was charged with felony stalking pursuant to § 45-5-220, MCA (2017), after following Molly Schroeder Busby (Busby), his ex-girlfriend, in violation of an order of protection. Busby obtained an order of protection in April 2018. The order of protection prohibited Smith from contacting Busby or being within 300 feet of Busby or her vehicle.

¶4 On August 31, 2018, Busby reported to the Bozeman Police Department that Smith had violated the order of protection. Busby reported that she observed Smith in his parked vehicle after she made a purchase at Town Pump. She reported that Smith followed her out of the Town Pump parking lot, and that she feared for her safety. At trial, Busby testified she felt "scared to death" and started shaking when she saw Smith in the Town Pump parking lot. Busby testified that she sped out of the parking lot and started to turn down various streets to avoid taking her normal route home.

2

¶5    The surveillance video from Town Pump showed a silver Dodge Ram truck enter the parking lot through the same entrance that Busby entered moments earlier. The truck parked halfway in a spot, remained there for a few seconds, and backed fully into another parking spot. The truck then quickly followed Busby's vehicle out of the parking lot without headlights on even though it was dark. Busby reported to law enforcement that the man in the truck resembled Smith.

¶6    Before arriving at Town Pump, Busby ran errands at Wal-Mart. Wal-Mart's surveillance video displayed Busby's vehicle drive into the parking lot and Busby enter the store. Several minutes later, the truck entered the parking lot and stopped directly behind Busby's vehicle. The truck then parked in a new location, several spaces away from Busby's vehicle. Law enforcement observed that it appeared the truck was in a position to monitor Busby's vehicle. The driver did not get out of the truck.

¶7    When Busby returned to her vehicle, the truck moved to a different parking space. When Busby left the Wal-Mart parking lot through the Oak Street exit, the truck followed her through the same exit. After watching the surveillance video, Busby thought the male in the truck looked like Smith and that the truck resembled Smith's vehicle.

¶8    On September 10, 2018, law enforcement contacted Smith by phone. Smith expressed he was aware of Busby's order of protection. Smith admitted he was at Wal-Mart to buy groceries. Smith indicated he did not leave Town Pump after he became aware Busby was also at Town Pump.

¶9    Busby testified at Smith's trial that she "felt very violated" after discovering that Smith had been watching her. When Busby became aware Smith was following her, she

3

bought pepper spray, enrolled in concealed carry class, installed a home security system, and used different routes to drive home. After the State rested its case-in-chief, Smith moved to dismiss the case on insufficient evidence grounds. The District Court denied the motion. The jury convicted Smith of stalking.

¶10 Insufficient evidence claims are reviewed de novo. *State v. Bekemans*, 2013 MT 11, ¶ 18, 368 Mont. 235, 293 P.3d 843. On appeal, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Fleming*, 2019 MT 237, ¶ 12, 397 Mont. 345, 449 P.3d 1234. "It is within the province of the jury to weigh the evidence based on the credibility of the witnesses and to determine which version of events should prevail." *Fleming*, ¶ 12 (citing *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74). The jury's determination regarding disputed questions of fact and credibility will not be disturbed on appeal. *State v. Rennaker*, 2007 MT 10, ¶ 16, 335 Mont. 274, 150 P.3d 960. We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *Fleming*, ¶ 12 (citing *Weigand*, ¶ 7).

¶11 A person commits the offense of stalking if the person "purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly: (a) following the stalked person; or (b) harassing, threatening, or intimidating the stalked person, in person or by mail, electronic communication . . . or any other action, device, or method." Section 45-5-220(1), MCA (2017). Once the defendant has been given actual notice the stalked person does not want

4

to be followed or contacted, any further attempts by the defendant to contact or follow the stalked person constitute prima facie evidence that the defendant purposely or knowingly followed, harassed, threatened, or intimidated the stalked person. Section 45-5-220(6), MCA (2017); *State v. Yuhas*, 2010 MT 223, ¶ 8, 358 Mont. 27, 243 P.3d 409.

¶12 Whether the stalked person has suffered substantial emotional distress is measured by a reasonable person standard as to whether, when faced with the same conduct, a reasonable person would experience substantial emotional distress. *Yuhas*, ¶ 9. The stalked person does not need to manifest physical symptoms to establish substantial emotional distress. *Yuhas*, ¶ 9.

¶13 "A repeated action is one that happens more than once." *Yuhas*, ¶ 10. Intimidation consists of making the person being stalked timid or frightened. *Yuhas*, ¶ 10.

¶14 After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Smith committed the essential elements of stalking beyond a reasonable doubt.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Affirmed.

_____
Justice

5

We Concur:

_____

_____

_____

_____
Justices

6