No. DA 06-0015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 31

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

WAYNE ROGER RAMSEY,

    Defendant and Appellant.


APPEAL FROM:    The District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DC 05-130,
                Honorable Ed McLean, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Lance P. Jasper, Paoli, Latino, Kutzman & Jasper, P.C.,
                Missoula, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; C. Mark Fowler, Assistant
                Attorney General, Helena, Montana

                Fred Van Valkenburg, County Attorney; Kristen H. LaCroix, Deputy
                County Attorney, Missoula, Montana


                                    Submitted on Briefs:  December 28, 2006

                                              Decided:  February 7, 2007

Filed:


        _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Defendant Wayne Ramsey appeals his conviction for aggravated burglary, assault with a weapon, and misdemeanor theft, as well as his classification as a persistent felony offender (PFO).  We affirm.

¶2    We restate the issues as follows:

¶3    1.  Did the District Court err in considering a sealed dependent neglect file it had previously ruled irrelevant?

¶4    2.  Did the District Court err in determining that the State provided adequate notice of its intention to seek treatment of Ramsey as a persistent felony offender?

¶5    3.  Was Ramsey given permission to enter the residence and take items from the residence?

## BACKGROUND

¶6    During the day, on February 22, 2005, Ramsey walked to the front door of a trailer home belonging to Ron Toney (Ron).  Ramsey knocked on the door, then walked around back and entered through the back door.  Ramsey took several items belonging to Ron, including Ron's gun and knife, from the trailer.

¶7    A neighbor called Ron and told him that someone was in the house.  Ron responded that no one was supposed to be there, to call the police, and that he would be there soon.  When Ron pulled up to the back of the trailer, Ramsey ran out the front door.  Ron initially ran into the trailer, but then pursued Ramsey.  According to Ron, Ramsey, once confronted, pulled out Ron's gun and pointed it at Ron, who turned and ran.  Police

soon found Ramsey, took him into custody, and located Ramsey's backpack, Ramsey's hat, and Ron's gun, all of which Ramsey had discarded during his flight.

¶8    At the time of this incident, Windy Toney was married to, but separated from, Ron. Windy did not live in the trailer with Ron, had never lived there, and in fact had never entered the residence. Windy and Ramsey were friends through work. Windy testified, at Ramsey's bench trial, that she had told Ramsey she was afraid of Ron and had given Ramsey permission to enter any marital property or residence. However, Windy conceded that she did not give Ramsey express permission to enter Ron's trailer home, nor had she asked Ramsey to go to the trailer or to get any of her property out of the trailer.

¶9    The State filed charges against Ramsey to which he pled not guilty. On June 16, 2005, at the omnibus hearing, the District Court ordered the State to file notice by June 17, 2005, concerning what convictions it was relying on in seeking to have Ramsey sentenced as a PFO. The State failed to file the PFO information until June 22, 2005. Ramsey, however, did not object to the underlying convictions and only objected to the State's late PFO notice at the sentencing hearing, almost five months later.

¶10    On August 22, 2005, at the final status conference, the parties discussed Ramsey's request to review the DPHHS case file concerning Windy and Ron. It was agreed that the court would conduct an *in camera* inspection of the file. Ramsey submitted four questions for the court to consider in reviewing the file: whether the file contained information relating to Windy or Ron's honesty; whether the case was contentious; whether abuse was alleged; and whether there was any information in the file relevant to

3

Ramsey's defense that he had consent to enter the trailer home. The court determined that the file contained no information relevant to the defense, and therefore did not allow Ramsey to review the file.

¶11 During trial, the court mentioned the DPHHS file to Windy, telling her "it would behoove you to keep in mind that the Court has read the dependent neglect case from one end to the other, from start to finish." The court also questioned Windy regarding whether she was allowed to go to Ron's residence when the child at issue in the DPHHS file resided there.

¶12 At the end of the trial, the court found Ramsey guilty on all counts, and sentenced him to forty-five years in prison, with thirty-five years suspended. From his conviction, Ramsey appeals.

## STANDARD OF REVIEW

¶13 The determination of the relevancy and admissibility of evidence is left to the sound discretion of the trial judge, and this Court will not overturn such determination absent an abuse of discretion. *State v. Paoni*, 2006 MT 26, ¶ 13, 331 Mont. 86, ¶ 13, 128 P.3d 1040, ¶ 13 (citations omitted). We review a criminal sentence for its legality; that is, whether the sentence is within the statutory parameters. *State v. Heath*, 2004 MT 58, ¶ 8, 320 Mont. 211, ¶ 8, 89 P.3d 947, ¶ 8. The district court's statutory interpretation is a question of law, which we review to determine whether it is correct. *Heath*, ¶ 8.

## DISCUSSION

¶14 **1. Did the District Court err in considering a sealed dependent neglect file it had previously ruled irrelevant?**

¶15 Ramsey argues that the District Court committed reversible error when it considered, at trial, the sealed DPHHS file which the court had previously ruled irrelevant and refused to provide to Ramsey. Ramsey contends that, if he had been provided access to the file, which he assumes contained defamatory material regarding Windy, he would have employed a "completely different trial strategy." Instead, only the State and the court were aware of Windy's "dishonest, manipulative nature" and the fact that she was restricted from entering the trailer. Thus Ramsey was denied his right to a fair trial.

¶16 Ramsey, however, never specifically asked the court to exclude the DPHHS file, and then failed to object to the court's reference to the file during trial. We will not allow him to raise the issue for the first time on appeal, because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it never had the opportunity to consider. *State v. Johnson*, 2005 MT 318, ¶ 13, 329 Mont. 497, ¶ 13, 125 P.3d 1096, ¶ 13. Additionally, we only review record based claims on appeal, and the DPHHS file is absent from the record before us. *See State v. Frasure*, 2004 MT 305, ¶ 13, 323 Mont. 479, ¶ 13, 100 P.3d 1013, ¶ 13.

¶17 **2. Did the District Court err in determining that the State provided adequate notice of its intention to seek treatment of Ramsey as a persistent felony offender?**

¶18 Ramsey also argues that the State violated § 46-13-108, MCA, by failing to provide adequate notice that it intended to seek PFO status until five days after the court imposed deadline. Section 46-13-108, MCA, states in pertinent part:

5

(1) Except for good cause shown, if the prosecution seeks treatment of the accused as a persistent felony offender, *notice of that fact must be given at or before the omnibus hearing* pursuant to 46-13-110.

(2) The notice *must specify* the alleged prior convictions . . . .

(Emphasis added.)

¶19 The State maintains that it provided Ramsey notice that it might seek PFO status when it wrote "file by 6/17/05" under the PFO section of the omnibus memorandum. Further, the State notes that it was only five days late in providing notice of the alleged prior convictions, and that Ramsey did not object to the late notice filing until nearly five months later, at the sentencing hearing.

¶20 We dealt with this same issue in *State v. Shults*, where we noted that "[t]he purpose for providing such notice is to give the defendant an opportunity to file an objection to the criminal record relied upon in the notice and to hold a hearing should there be any such objection." 2006 MT 100, ¶ 22, 332 Mont. 130, ¶ 22, 136 P.3d 507, ¶ 22 (citations omitted). We concluded that if a defendant had ample opportunity to object to PFO treatment and challenge the underlying criminal record, and if the defendant was not prejudiced by the timing of the filing, we will not overturn a court's decision to impose a sentence with a PFO designation. *Shults*, ¶ 22.

¶21 In this case, Ramsey was aware, on June 16, 2005, that the State was going to move for PFO status. While the State was five days late in providing Ramsey with the predicate offenses, Ramsey had almost five months to file an objection to the alleged prior offenses before the court imposed sentence. As the record indicates that Ramsey did not file an objection to the predicate offenses, despite having adequate time to do so,

6

other than a general objection based on the State's late notice, we hold that the District Court correctly determined that the State provided adequate notice of its intention to seek PFO status.

¶22 **3. Was Ramsey given permission to enter the residence and take items from the residence?**

¶23 Finally, Ramsey argues that Windy provided him with consent to enter Ron's trailer. Windy was able to consent, according to Ramsey, because all property owned by both Windy and Ron was "marital property," a fact which the District Court took judicial notice of at trial. Windy, as Ron's spouse, had the right to be in the trailer, to provide others with access to the trailer, and to possess any and all personal property in the trailer. While Windy may not have expressly told Ramsey he could remove her things from Ron's trailer, she did drive him by the trailer and tell Ramsey what property Ron had taken from her. Further, Ramsey contends that whether or not Windy had actual authority to enter the trailer, he believed she had the authority and thus thought he had permission to enter the trailer and remove Windy's belongings.

¶24 We disagree. First, the record does not support Ramsey's permission defense. Windy testified that she did not expressly give Ramsey permission to enter Ron's trailer, did not expressly ask Ramsey to retrieve her belongings, and was, in fact, surprised that Ramsey entered the trailer. Second, Windy's purported consent provides no lawful defense to theft under Montana law in any case, as § 45-6-303(2), MCA, states that "[i]t is no defense that theft was from the offender's spouse." The only exception is for "household and personal effects . . . normally accessible to both spouses." The "personal

effects" exception, however, does not apply if the parties have "ceased living together." Section 45-6-303(2), MCA. As Windy and Ron were separated and had ceased living together, Ramsey's claim that Windy gave him permission to enter Ron's trailer and take property provides Ramsey no defense. Finally, while Ramsey might have thought he had lawful permission to enter the trailer, the law nonetheless recognizes theft by a spouse, and we have long held that ignorance of the law is no excuse. *State v. Tichenor*, 2002 MT 311, ¶ 46, 313 Mont. 95, ¶ 46, 60 P.3d 454, ¶ 46.

## CONCLUSION

¶25 For the foregoing reasons, we affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JOHN WARNER

8