DA 07-0373

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 167

ROB HAGER,

      Plaintiff and Appellee,

  v.

J.C. BILLION, INC., a Montana corporation,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 05-412
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lyman H. Bennett, Attorney at Law, Bozeman, Montana

      For Appellee:

          Michael E. Wheat, Cok, Wheat & Kinzler, PLLP, Bozeman, Montana

Submitted on Briefs:  March 26, 2008

Decided:  May 13, 2008

Filed:

_____
                   Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 J.C. Billion, Inc. (Billion) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, upon a jury verdict in favor of Rob Hager (Hager). We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the District Court abuse its discretion when it submitted an instruction to the jury that referred to Billion's employee handbook?*

¶4 *Did sufficient evidence exist to support the jury's award for damages?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Hager started working for Billion in March of 1985 as the manager of Billion Auto Body. Billion converted the auto body shop (the shop) to take an assembly line-type approach to servicing vehicles in the spring of 2004. Billion hired an additional man, Keith Stone (Stone), to serve as the shop's estimator in April of 2004, and to facilitate the shop's new direction.

¶6 Billion divided the shop's management during the summer of 2004. Billion promoted Stone from his position as an estimator to the shop's "Production Manager." Hager became the shop's "Sales Manager." Hager received a "pay plan" in May of 2004 that set his salary at $6,000 per month through December of 2004.

¶7 Billion provided Hager a document entitled "Rob Hager Job Responsibilities" in the early fall of 2004. The document listed fifteen duties relating to the sales manager's responsibility to "grow the sales, keep customers happy, and maintain department profitability." Hager met with Billion's president, Joe Billion, in September of 2004. Hager

2

received another copy of the job responsibilities document at this meeting. This second copy included assessment scores assigned by Joe Billion to each of the fifteen listed duties. Hager received an "F" on the assessment.

¶8 Billion re-assigned Hager from "Sales Manager" to "Body Shop Estimator" shortly after Hager's 2004 September meeting with Joe Billion. Hager received a revised "pay plan," effective October 1, 2004, that set his salary at $3,000 per month. Hager resigned from Billion in January of 2005. Hager found a replacement position as a service writer with Big Sky R.V.

¶9 Hager filed a complaint against Billion on June 21, 2005. The complaint alleged that Billion had discharged Hager in violation of the Wrongful Discharge From Employment Act (the Act). Hager alleged that Billion had created an intolerable work environment for Hager in violation of the Act. The parties unsuccessfully attempted mediation, and a four-day jury trial commenced on June 4, 2007.

¶10 Hager testified at trial. Hager discussed the J.C. Billion employee handbook. Billion did not object to the admission of the handbook into evidence. The handbook provides:

> When an employee . . . is in violation of work rules, but not subject to immediate discharge, the following progressive disciplinary action shall normally be taken:
> 1. First occasion – Verbal warning, or if more serious, a written warning may be immediately given.
> 2. Second occasion – Written warning (if not given on first occurrence).
> 3. Third occasion – Discharge.
>
> All employees must realize that **written warnings are reserved for the most serious occasions.** The next step, after a written warning, is termination of

3

your employment. **Remember, the verbal warning step may be skipped in certain situations, if the offense is serious.** (Emphasis in original).

Hager asserted that he had received no verbal or written warnings before his demotion and wage reduction.

¶11 Joe Billion also testified at trial. Joe Billion confirmed that he had assessed Hager through the "Job Responsibilities" document. Joe Billion testified that Hager had not complied with the assessment plan and that Hager had become lazy and insubordinate. Joe Billion stated that Hager's conduct constituted a "violation of the work rules." Joe Billion asserted that he had demoted Hager to the shop's estimator as a result of his bad attitude and his poor performance evaluation.

¶12 Hager also testified at trial regarding his alleged damages. Hager summarized his calculations of the differences between his salary at J.C. Billion before his wage reduction and his current salary at Big Sky R.V. Hager also introduced as an exhibit a statement from Billion that listed the gross salary and benefits that Billion had paid to Hager from 1994 through January 2005.

¶13 The District Court settled the jury instructions at the close of the evidence. The parties discussed Hager's proposed instruction concerning wrongful discharge. Hager's proposed instruction provided:

> It is wrongful for an employer to discharge an employee if: the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or the employer violated the express provisions of its own written personnel policy.

4

Billion objected. Billion asserted that the instruction's clause concerning an employer's compliance with a written personnel policy had no application to Hager's case. Hager asserted that the evidence presented at trial raised the issue of Billion's failure to comply with its personnel policy. Hager noted Billion's determination that Hager had violated the rules. Hager also noted the fact that Billion had imposed no verbal or written warnings. Hager moved the court to amend the pleadings to conform to the evidence. The court granted Hager's motion over Billion's objection. The court accepted Hager's instruction concerning wrongful discharge in its entirety over Billion's objection.

¶14 The jury returned a verdict in Hager's favor and awarded him $60,000 in damages. Billion appeals.

## STANDARD OF REVIEW

¶15 We review a district court's jury instructions for an abuse of discretion. *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, ¶ 74, 162 P.3d 106, ¶ 74. We consider the instruction in its entirety, as well as in connection with the other instructions given and the evidence introduced at trial. *Murphy Homes, Inc.*, ¶ 74. The party assigning error to a district court's jury instruction must demonstrate prejudice in order to prevail on appeal. *Murphy Homes, Inc.*, ¶ 74. Prejudice does not exist if the jury instructions in their entirety state the applicable law of the case. *Murphy Homes, Inc.*, ¶ 74.

¶16 We review a jury's award of compensatory damages to determine if substantial credible evidence exists to support the jury's award. *Jenks v. Bertelsen*, 2004 MT 50, ¶ 30, 320 Mont. 139, ¶ 30, 86 P.3d 24, ¶ 30. We view the evidence in the light most favorable to

the prevailing party. *Jenks*, ¶ 30. Substantial evidence consists of "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, ¶ 26, 158 P.3d 998, ¶ 26 (citation omitted).

## DISCUSSION

## ISSUE ONE

¶17 *Did the District Court abuse its discretion when it submitted an instruction to the jury that referred to Billion's employee handbook?*

¶18 Billion argues that the second half of the wrongful discharge instruction had no relation to Hager's wrongful discharge claim. Billion argues that nothing in the employee handbook required Billion to follow the progressive disciplinary measures before making changes in Hager's employment conditions. Hager asserts that the changes that Billion made to Hager's employment conditions constituted a "discharge." Hager argues that Billion had to follow its disciplinary process before it could effect this "discharge."

¶19 Billion argues on appeal only that the District Court erred by submitting to the jury the second half of Hager's wrongful discharge instruction. Billion does not fault the court for granting Hager's motion to amend the pleading to conform to the evidence presented at trial. We normally will review on appeal only those issues raised by the parties. *Armstrong v. State,* 1999 MT 261, ¶ 4, 296 Mont. 361, ¶ 4, 989 P.2d 364, ¶ 4. We will review Billion's argument only with respect to the District Court's decision to submit to the jury the wrongful discharge instruction in its entirety.

6

¶20	The District Court's wrongful discharge instructions tracked the language from § 39-2-903, MCA, and § 39-2-904, MCA. Section 39-2-903(2), MCA, provides that the term discharge includes a constructive discharge. Section 39-2-903(1), MCA, defines constructive discharge as the voluntary termination of employment due to an employer-created situation that a reasonable person would consider intolerable. Finally, § 39-2-904, MCA, provides that a discharge is wrongful if the discharge "was not for good cause . . .," or if "the employer violated the express provisions of its own written personal policy."

¶21	Joe Billion testified that Hager's actions and conduct had constituted a violation of the work rules. Joe Billion stated that Hager's conduct had prompted Billion to demote Hager and to reduce his wage. Hager presented to the jury the verbal and written warning procedures that Billion "normally" undertook when an employee stood in violation of the work rules. Billion did not object to this evidence. Hager testified that he had received no verbal or written warnings before his demotion and wage reduction. Hager amended his pleadings to conform to all of this evidence at the end of the trial.

¶22	The District Court properly charged the jury with determining whether Hager's demotion and wage reduction constituted a "discharge." The court also charged the jury with deciding, in the event that the jury determined that a discharge had occurred, whether this discharge took place without good cause, or in violation of Billion's personnel policy. The District Court's instructions properly stated the applicable law in light of the evidence presented at trial and Hager's amended claims. *Murphy Homes, Inc.*, ¶ 74. The District

Court did not abuse its discretion by giving a wrongful discharge instruction that referred to an employer's violation of its written personnel policy.

## ISSUE TWO

¶23     *Did sufficient evidence exist to support the jury's award for damages?*

¶24     Billion asserts that insufficient evidence existed to support the jury's calculations concerning Hager's lost wages.  Billion argues that Hager's failure to submit into evidence tax returns or Internal Revenue Service (IRS) Form W-2 precluded the jury from assessing damages for lost wages.  Billion specifically cites Hager's failure to introduce any evidence demonstrating the "gross amount of wages that had been reported to the Internal Revenue Service on form W-2."

¶25     Hager alleged that his demotion and salary reduction constituted a wrongful discharge. Hager sought to recover lost wages, lost vacation benefits, and lost bonuses under the available remedies set forth in the Act.  Billion does not challenge Hager's claims with respect to lost vacation benefits and lost bonuses.  Accordingly, we confine our review to the issue of lost wages.

¶26     Section 39-2-903(6), MCA, provides that lost wages consist of the "gross amount of wages that would have been reported to the internal revenue service as gross income on Form W-2 . . . ."  The statute does not restrict a lost wage calculation to amounts obtained directly from a Form W-2 or any other tax document.  The court's instruction followed the statutory definition of lost wages and confined the calculation of lost wages to amounts that "would have been reported . . ." on Form W-2.

8

¶27 Billion misstates the statute. Billion argues that the statute requires Hager to establish his lost wages with evidence of wage amounts "that *had been* reported . . ." to the IRS. Hager could not establish his lost wages, of course, by contrasting Form W-2's from his new employment at Big Sky R.V. with Form W-2's from Billion. Hager no longer worked for, or received, Form W-2's from Billion.

¶28 Hager testified concerning his "annual salary" during his employment at Billion. Hager derived this amount from the statement provided by Billion during discovery and from the last "pay plan" that he had received before his demotion. Hager submitted Billion's statement and the "pay plan" as trial exhibits. Hager further testified that he had calculated his lost wages by subtracting the salary from his new job at Big Sky R.V., "based off my W-2 . . . ," from his annual salary at Billion. Hager provided testimonial evidence regarding the gross amount of wages that "would have been reported . . ." to the IRS. Hager's testimony regarding his lost wages constitutes substantial credible evidence to support the damages award. *Johnston*, ¶ 26. We conclude that sufficient evidence existed to support the jury's award.

¶29 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

9

/S/ JOHN WARNER
/S/ JIM RICE