DA 06-0751

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 381

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

ALLEN J. POTTER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DC 05-336
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Martin W. Judnich, Stevenson, Judnich & Associates, Missoula, Montana

        For Appellee:

                Hon. Mike McGrath, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

Submitted on Briefs:  October 3, 2007

Decided:  November 18, 2008

Filed:

_____
                             Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Allen J. Potter (Potter) appeals a judgment entered in the Montana Fourth Judicial District, Missoula County, convicting him of the offense of aggravated assault and sentencing him as a persistent felony offender.

¶2 Potter raises three issues on appeal, which we restate as follows:

¶3 (1) Did the District Court err in instructing the jury that attempted aggravated assault is a potential lesser included offense of aggravated assault?

¶4 (2) Did the District Court err in sentencing Potter as a persistent felony offender because the State did not give proper notice of its intent to have the District Court sentence him as a persistent felony offender?

¶5 (3) Was there insufficient evidence of serious bodily injury to convict Potter of aggravated assault?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 On July 7, 2005, Missoula police responded to a call from St. Patrick's Hospital in Missoula where a severely beaten woman had reported an assault. The victim, a therapist, reported that one of her former clients, Potter, had assaulted her at her home. The victim had been Potter's therapist for about a year and remained a friend until the time of the assault.

¶7 The night of the assault, Potter called the victim asking for a ride to a bus station. She declined. Potter asked if he could come to her house. The victim again declined. Nevertheless, Potter appeared at the victim's home and broke through the locked front door.

¶8 Potter proceeded to hit the victim, banging her head against the stairs, floor, and walls throughout her house. The victim estimated Potter hit her 20 to 25 times and struck her head

2

against the wall or floor 10 to 15 times. Potter does not deny he assaulted the victim. He later told police the attack lasted for about an hour. At some point during the assault, Potter threatened the victim with a knife, telling her he was going to cut out her tongue. The victim feared for her life and was able to stop the assault only by agreeing to take Potter to a liquor store. When Potter entered the liquor store, taking the car keys with him, the victim used spare keys from her purse to start the car. She drove directly to the hospital, calling 911 on the way. Potter returned to the victim's house where the Missoula police later arrested him.

¶9 The victim's injuries kept her in the hospital for three to four days. Her injuries included a fractured vertebra, a perforated eardrum, an eye laceration, a fractured hand, back pain, a sore nose, cuts and bruising on her face and scalp, bruised arms, and a concussion. The victim's face and eyes showed bruising for months and she suffered for some time from headaches and may still suffer from various other cognitive problems.

¶10 On July 27, 2005, the State charged Potter with one count of aggravated assault and one count of assault with a weapon, felonies, and one count of obstructing a peace officer, a misdemeanor. Potter pled not guilty to each count. On October 20, 2005, the State filed a notice of intent to seek increased punishment of Potter as a persistent felony offender pursuant to §§ 46-13-108, 46-18-501-502, MCA. On the same day, counsel for Potter signed an omnibus hearing memorandum that provided notice, pursuant to § 46-13-110(3)(g), MCA, that the State sought to have Potter sentenced as a persistent felony offender.

¶11 On January 23, 2006, the State filed an amended information changing the aggravated assault charge to criminal endangerment. On March 17, 2006, the State filed a second

3

amended information, dropping the criminal endangerment charge and other original charges (assault with a weapon and obstructing a police officer), and again charging Potter with aggravated assault. Potter requested a continuance of his trial arguing the amended charge would change his trial strategy. The District Court set the trial for August 23, 2006. On March 20, 2006, counsel for Potter filed a motion seeking to retain an expert witness at the expense of the State, wherein counsel acknowledged that the second amended information charged Potter with aggravated assault and that Potter had been charged as a persistent felony offender, resulting in a potential sentence of 5 years to 100 years.

¶12 Potter was tried on the aggravated assault charge August 23 and 24, 2006. The District Court included in its jury instructions two lesser included offenses: attempted aggravated assault and assault. Potter objected to including attempted aggravated assault as a lesser included offense. The jury returned a guilty verdict on the aggravated assault charge. On October 25, 2006, Potter filed an objection to being sentenced as a persistent felony offender. At the sentencing hearing on November 2, 2006, the District Court heard argument on Potter's objection to the persistent felony offender designation. The objection was denied. The District Court sentenced Potter to 20 years in Montana State Prison without possibility of parole and also sentenced Potter to an additional 50 years in Montana State Prison, with 20 years suspended as a persistent felony offender.

## STANDARDS OF REVIEW

¶13 We review criminal jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. *State v. Cameron*, 2005 MT

4

32, ¶ 13, 326 Mont. 51, ¶ 13, 106 P.3d 1189, ¶ 13 (citing *State v. Bowman*, 2004 MT 119, ¶ 49, 321 Mont. 176, ¶ 49, 89 P.3d 986, ¶ 49). We review the District Court's decision to give or refuse a particular jury instruction for abuse of discretion. We consider the instructions in their entirety in connection with other instructions given, as well as evidence introduced in the case. *Hager v. J. C. Billion, Inc.*, 343 Mont. 353, ¶ 15, 184 P.3d 340, ¶ 15, 2008 MT 167, ¶ 15. The party challenging the jury instruction has the burden of proving the judge's decision resulted in prejudice. *Hager*, ¶ 15. However, "[p]rejudice does not exist if the jury instructions in their entirety state the applicable law of the case." *Hager*, ¶ 15.

¶14     We review a criminal sentence for its legality, that is, whether the sentence is within the statutory parameters. *State v. Ramsey*, 2007 MT 31, ¶ 13, 336 Mont. 44, ¶ 13, 152 P.3d 710, ¶ 13 (citing *State v. Heath*, 2004 MT 58, ¶ 8, 320 Mont. 211, ¶ 8, 89 P.3d 947, ¶ 8).

¶15     We review the sufficiency of the evidence in a criminal matter to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, ¶ 7, 119 P.3d 74, ¶ 7.

**DISCUSSION**

¶16     *Issue 1: Did the District Court err in instructing the jury that attempted aggravated assault is a potential lesser included offense of aggravated assault?*

¶17     A lesser included offense instruction "must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." Section 46-16-607(2), MCA. However,

5

"[t]he party assigning error to a district court's jury instruction must demonstrate prejudice in order to prevail on appeal." *Hager*, ¶ 15.

¶18 Here, the District Court instructed the jury on the lesser included offenses of attempted aggravated assault at the request of the State and assault at the request of Potter. Potter contends that attempted aggravated assault cannot qualify as a lesser included offense and therefore the District Court improperly included attempted aggravated assault in the jury instructions.

¶19 However, Potter was convicted of the greater offense of aggravated assault, not the lesser offense of attempted aggravated assault. The jury never reached the question of whether Potter committed the lesser offense. Potter suffered no prejudice resulting from the District Court's decision to instruct the jury on the lesser included offense of attempted aggravated assault. A judgment is not to be reversed where the defendant suffered no prejudice. Section 46-20-701(1), MCA.

¶20 *Issue 2: Did the District Court err in sentencing Potter as a persistent felony offender because the State did not give proper notice of its intent to have the District Court sentence him as a persistent felony offender?*

¶21 Potter argues the District Court erred in sentencing him as a persistent felony offender because the State did not file separate notices of its intent to seek to have Potter sentenced as a persistent felony offender after the first and second amended informations were filed. Section 46-13-108, MCA, requires:

(1) Except for good cause shown, if the prosecution seeks treatment of the accused as a persistent felony offender, notice of that fact must be given at or before the omnibus hearing pursuant to 46-13-110.

(2) The notice must specify the alleged prior convictions and may not be made known to the jury before the verdict is returned except as allowed by the Montana Rules of Evidence.

(3) If the defendant objects to the allegations contained in the notice, the judge shall conduct a hearing to determine if the allegations in the notice are true.

(4) The hearing must be held before the judge alone. If the judge finds any allegations of the prior convictions are true, the accused must be sentenced as provided by law.

(5) The notice must be filed and sealed until the time of trial or until a plea of guilty or nolo contendere is given by the defendant.

¶22 This Court has not directly addressed a situation in which the State provided notice that it was seeking treatment of the accused as a persistent felony offender according to the statute but did not again give such notice following the filing of an amended information. The purpose of the persistent felony offender notice requirement "'is to give the defendant an opportunity to file an objection to the criminal record relied upon in the notice and to hold a hearing should there be any such objection.'" *State v. Shults*, 2006 MT 100, ¶ 22, 332 Mont. 130, ¶ 22, 136 P.3d 507, ¶ 22 (quoting *State v. McQuiston*, 277 Mont. 397, 408, 922 P.2d 519, 526 (1996) (overruled on other grounds)). In *McQuiston*, we concluded, because McQuiston received notice of the State's intention to seek persistent felony offender status and was not prejudiced by a failure to formally file such notice, we would not overturn the district court's decision. *McQuiston*, 277 Mont. at 409, 922 P.2d at 527.

¶23 Additionally, this Court has held: "[I]f a defendant had ample opportunity to object to PFO treatment and challenge the underlying criminal record, and if the defendant was not

7

prejudiced by the timing of the filing, we will not overturn a court's decision to impose a sentence with a PFO designation." *Ramsey*, ¶ 20 (citing *Shults*, ¶ 22).

¶24 Potter acknowledges the State filed a notice of intent to seek increased punishment as a persistent felony offender on October 20, 2005. On the same day counsel for Potter signed an omnibus hearing memorandum clearly stating that, pursuant to § 46-13-110(3)(g), MCA, the State sought to have Potter sentenced as a persistent felony offender. Also, following the filing of the second amended information, counsel for Potter filed a motion for expert witness payment, which shows beyond doubt Potter knew if he was convicted as charged in the second amended information, the State would seek to have him sentenced as a persistent felony offender.

¶25 There is nothing in the statutes requiring either a new omnibus hearing or a new persistent felony offender notice upon the filing of an amended information. *See* §§ 46-11-205, 46-13-108, 46-13-110, MCA. The statutes simply require an amended information be filed no less than five days before trial, an omnibus hearing be held "within a reasonable time following the entry of a not guilty plea but not less than 30 days before trial," and a persistent felony offender notice be given either at or before the omnibus hearing. Sections 46-11-205, 46-13-108, 46-13-110, MCA.

¶26 Potter knew for over a year the State would seek to have him sentenced as a persistent felony offender, and there is nothing in the record indicating the timing of the notice prejudiced him. The District Court did not err in sentencing Potter as a persistent felony offender.

8

¶27   *Issue 3: Was there insufficient evidence of serious bodily injury to convict Potter of aggravated assault?*

¶28   Potter's final argument on appeal is that the jury did not have sufficient evidence to convict him of aggravated assault. As stated above, we review the sufficiency of the evidence in a criminal matter to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weigand*, ¶ 7.

¶29   Under Montana law, "[a] person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another or purposely or knowingly, with the use of physical force or contact, causes reasonable apprehension of serious bodily injury or death in another." Section 45-5-202(1), MCA. Section 45-2-101(66)(a), MCA, provides:

> (a)"Serious bodily injury" means bodily injury that:
>   (i) creates a substantial risk of death;
>   (ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or
>   (iii) at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.
> (b) The term includes serious mental illness or impairment.

¶30   This Court does not look at each injury individually but rather "considers the evidence of the injury . . . in conjunction with the evidence of . . . other injuries." *State v. Walsh*, 281 Mont. 70, 75, 931 P.2d 42, 46 (1997) (overruled on other grounds). Under § 45-2-101(66)(a), MCA, the terms "protracted" and "impairment" are of common usage, and thus

9

the fact finder must look to the circumstances to determine what meets the definition of protracted or impairment. *State v. Trull*, 2006 MT 119, ¶¶ 34-35, 332 Mont. 233, ¶¶ 34-35, 136 P.3d 551, ¶¶ 34-35. When there is conflicting evidence presented, "it [is] within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail." *State v. Stucker*, 1999 MT 14, ¶ 22, 293 Mont. 123, ¶ 22, 973 P.2d 835, ¶ 22.

¶31    At trial, Dr. Beth E. Thompson, who directed the victim's care at the hospital, testified, in her professional medical opinion, based on the extent of all the injuries at the time of the assault, that the victim suffered serious bodily injury. Dr. Thompson also testified she believed, at the time of the assault, some of the injuries presented a risk of permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ. She listed the perforated ear drum, the laceration of the eye, the psychological injuries, and the fractured neck vertebra as having the potential to cause permanent disfigurement or protracted loss or impairment of function.

¶32    The State also called Dr. Paul J. Bach to testify regarding the victim's brain function and cognitive ability following the assault. Dr. Bach testified the victim displayed exceptional verbal ability but abysmal nonverbal reasoning performance. Dr. Bach further testified that, given the large discrepancy in performance between the two cognitive abilities, as well as a correlation between the portion of the victim's brain injured in the assault with poor nonverbal reasoning ability, the victim had suffered a protracted loss of function of the brain as a result of the assault. Finally, the State called a friend of the victim, who also knew

10

the victim in a professional capacity, to testify. The friend testified that, following the assault, the victim had lost some cognitive ability, was not nearly as mentally sharp as she had been, and seemed to have much less stamina.

¶33 In contrast, Potter presented the testimony of Dr. DeWitt, a plastic surgeon and ear, nose, and throat specialist to rebut the testimony of the State's expert witnesses. After reviewing the medical records of the victim, Dr. DeWitt testified that none of the physical injuries to the victim's face and head would be consistent with the definition of serious bodily injury. Dr. DeWitt focused in particular on the victim's facial discoloration, orbital rim injury, deviated septum, and ear perforation injury. Dr. DeWitt maintained that these injuries did not present a risk of death, any serious disfigurement, or the potential loss of function of a bodily member or organ. He did not, however, testify as to the neck fracture or the brain or psychological injuries the victim also suffered.

¶34 Viewing the evidence in a light most favorable to the prosecution, the jury was entitled to believe the evidence presented by the State and from that evidence could have rationally concluded the victim suffered serious bodily injury as defined by statute.

¶35 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

11