FILED

01/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0332

DA 23-0332

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 14N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

DAVID A. BOUCHER,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DC-2022-30
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     James M. Siegman, Attorney at Law, Jackson, Mississippi

     For Appellee:

     Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

     Steve Haddon, Jefferson County Attorney, Andrew W. Paul, Chief
Deputy County Attorney, Boulder, Montana

Submitted on Briefs:  December 18, 2024

Decided:  January 22, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     David Allen Boucher Jr. (Boucher) appeals his conviction in Montana's Fifth Judicial District Court, Jefferson County, for felony DUI.  We affirm.

¶3     On August 19, 2022, Boucher was charged with driving or being in actual physical control of a motor vehicle while under the influence of alcohol, fourth or subsequent offense, in violation of § 61-8-1002(1)(a), MCA.  In its supporting affidavit, the State asserted that upon a call from a motorist stranded in his 1970s orange and brown striped motor home on Homestake Pass, Jefferson County Sheriff's Office Deputy Wilhelm located the motorist.  Deputy Wilhelm could smell the odor of gasoline and engine oil and could feel the heat radiating from the engine bay indicating the motor home was recently running/driven.  The rear tire of the motor home was in a large ditch and unable to get out.  Boucher stumbled out of the motor home.  Upon being asked if he had anything to drink, Boucher admitted he had a few drinks a few hours before.  Boucher reportedly had difficulty maintaining his balance, performed poorly on field sobriety tests, and blew a .171 on the personal breath test.  He was transported to the detention center where he consented to Intoxilyzer testing, blowing a .124.

¶4     On September 22, 2022, the State filed a notice indicating its intent to rely on Montana Crime Lab reports. Five certification forms from the Department of Justice Forensic Science Division were attached to this notice—two field certification report forms for an Intoxilyzer 9000, serial number 3154, from August 1, 2022 and August 30, 2022; a laboratory certification for the Intoxilyzer 9000, serial number 3154, dated September 30, 2021, pursuant to Admin. R. M. 23.4.214 (2012); a notice that the calibration sample of .08 percent had been field certified under Admin. R. M. 23.4.213 (2012); and a certification that Deputy Wilhelm had been trained and certified as a breath test specialist pursuant to Admin. R. M. 23.4.216–218 (2012).

¶5     At trial, the State presented testimony from Deputies Wilhelm and Zufelt, who had encountered and arrested Boucher on August 13, 2022. Each testified to their observations of Boucher and his arrest. Deputy Wilhelm's body camera recording was admitted and shown to the jury. Without objection, the State entered the Intoxilyzer report indicating the results of Boucher's testing at the detention facility and Deputy Wilhelm likewise testified the Intoxilyzer 9000 result showed Boucher's BAC to be .124. During cross-examination of Deputy Wilhelm, Boucher's counsel asked about horizontal gaze nystagmus (HGN) testing.[1] Prior to the State's re-direct examination, the parties agreed

---

[1] Boucher had, prior to trial, filed a motion in limine to preclude reference to or evidence of horizontal or vertical gaze nystagmus testing without a foundational showing as to the reliability of such testing. The State evidently agreed it would not present evidence as to HGN testing as it did not have an expert to testify as to the science supporting the test. Upon its direct examination, the State did not elicit evidence from Deputy Wilhelm about his conducting of HGN testing on Boucher. As Boucher's counsel raised the issue of HGN testing on cross-examination, Boucher opened the door for the State to re-direct on the HGN testing.

the State could redirect regarding this test and why the State had not presented evidence about it on its direct examination of Deputy Wilhelm. Throughout trial, Boucher's defense focused on persuading the jury that because the vehicle was stuck and the engine not running when law enforcement encountered Boucher, he was not in actual physical control of the vehicle. After approximately 20 minutes of deliberation, the jury returned a unanimous guilty verdict.

¶6 On appeal, Boucher asserts the District Court committed reversible error by permitting introduction of Boucher's BAC results without sufficient foundation, by failing to admonish the jury to ignore the results of the HGN test for insufficient foundation, by denying Boucher's motion to dismiss as the State introduced inadmissible evidence in support of its case, and by failing to use Boucher's proposed jury instructions regarding actual physical control of a motor vehicle.

¶7 We review evidentiary rulings in a criminal case for an abuse of discretion. *State v. Bomar*, 2008 MT 91, ¶ 14, 342 Mont. 281, 182 P.3d 47. We review de novo a district court's denial of a motion for directed verdict. *State v. Swann*, 2007 MT 126, ¶ 17, 337 Mont. 326, 160 P.3d 511. We review jury instructions in a criminal case to determine whether they fully and fairly instruct the jury on the law applicable to the case. *Swann*, ¶ 32. "Further, we recognize that a district court has broad discretion when it instructs a jury, and we therefore review a district court's decision regarding jury instructions to determine whether the court abused that discretion." *Swann*, ¶ 32.

¶8 Upon our review of the record, we find no merit in any of Boucher's appealed issues. After receiving the State's notice indicating its intent to rely on Montana Crime Lab reports

4

along with the five certification forms from the Department of Justice Forensic Science Division, Boucher filed a pretrial motion in limine to preclude admission of breath testing results without a proper foundational showing. This motion did not indicate how the previously-provided certification forms were foundationally inappropriate or raise any specific foundational deficits. From the motion itself it is apparent that if, at trial, Boucher believed the State failed to lay the proper foundation for Boucher's Intoxilyzer results, he would be required to object. At trial, when the State formally moved for admission of the Intoxilyzer results, Boucher's counsel did not contest the foundation for such evidence but instead affirmatively advised the court, "[n]o objection, Your Honor." Thus, Boucher did not preserve this issue for appeal.

¶9 Generally, this Court does not address issues not preserved for appeal. Plain error review is an exception to this general rule. The purpose of plain error review is to correct error not objected to at trial but that affects the fairness and integrity of the proceedings. *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142. To reverse a decision for plain error, a defendant must: (1) demonstrate the error implicated a fundamental right, and (2) firmly establish that a failure to review the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of a trial or proceedings, or compromise the integrity of the judicial process. *Akers*, ¶ 10.

¶10 Here, we agree with the State that, other than asserting plain error review to be warranted, Boucher offers no analysis as to why. His counsel clearly understood a foundational challenge could be made to the Intoxilyzer evidence and affirmatively chose not only to not object but to affirmatively agree to its admission. From review of the record,

5

it is apparent that defense counsel's tactics through the course of the litigation changed. While at the outset counsel was focusing on preclusion of the Intoxilyzer results and HGN testing, at trial the defense no longer sought to preclude admission of these but rather attempted to make them irrelevant. If the defense could persuade the jury that Boucher was not in actual physical control of the vehicle as it was stuck and the engine was not running when officers arrived, it was irrelevant whether or not he was under the influence of alcohol. Given the Intoxilyzer certification forms, Deputy Wilhelm's training and certification as a breath test specialist, and the body camera recording which permitted the jury to view Boucher and the behaviors he exhibited evidencing his intoxication, counsel's changed trial tactics were understandable, but they do not support plain error review. Boucher does not seriously question the reliability of the Intoxilyzer testing, Deputy Wilhelm's competence as a breath test specialist, nor his apparent impairment resulting from alcohol consumption. Boucher has failed to demonstrate the criteria necessary for plain error review.

¶11 Next, Boucher asserts the District Court erred by failing to admonish the jury to ignore the results of the HGN test for insufficient foundation. Consistent with its pretrial agreement, the State did not elicit testimony from Deputy Wilhelm about Boucher's performance on HGN testing. During cross-examination, however, Boucher's counsel elicited evidence from Deputy Wilhelm as to Boucher's performance on the HGN test—which was somewhat helpful to Boucher as Deputy Wilhelm testified Boucher had exhibited only two out of six clues of impairment on the test indicating he did not have a high dose of alcohol. Boucher then agreed based on his cross-examination that the State

6

appropriately re-directed to explain it had not asked about HGN testing on direct as the State did not have an expert available to testify as to the science behind the HGN test. At no time did Boucher ask the District Court to admonish or instruct the jury to ignore the results of the HGN test for insufficient foundation. We will not permit Boucher to first manufacture the issue on cross-examination and then raise it for the first time on appeal. It is fundamentally unfair to fault a district court for failing to rule on an issue it never had the opportunity to consider. *State v. Ramsey*, 2007 MT 31, ¶ 16, 336 Mont. 44, 152 P.3d 710.

¶12 After the State rested its case-in-chief, Boucher made a motion for a directed verdict asserting the State failed to present sufficient evidence as to the element of actual physical control. The District Court denied the motion. Boucher argues the State claimed he had actual physical control of his vehicle because he could have had a friend come assist him in getting the vehicle unstuck. He asserts that the State failed to enter any evidence of any such friend with the time, means, and motivation to assist Boucher and to the extent the District Court relied on this evidence in denying the motion for directed verdict, it erred. In a criminal case, a motion for dismissal for insufficiency of the evidence under § 46-16-403, MCA, is only appropriate if, viewing the evidence in a light most favorable to the prosecution, no evidence exists upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Bomar*, ¶ 13; *see also Swann*, ¶ 16. From our review of the record, when viewed in a light most favorable to the prosecution, it is clear the State presented sufficient evidence from which a jury could conclude Boucher was in actual physical control of the vehicle—Boucher exited the

vehicle from the driver's seat when officers arrived, the vehicle engine was warm and officers smelled gas from the engine and burnt rubber from the spinning of the vehicle's tires, no one else was present to have driven the vehicle, and when Boucher called law enforcement to report he needed assistance he asked Deputy Wilhelm if he should attempt to back the vehicle up. Further, both Deputy Wilhelm and Deputy Zufelt testified to their belief that the vehicle was moveable with a little effort in getting it unstuck. As such, the District Court did not err in denying Boucher's motion for directed verdict based on insufficient evidence of actual physical control. On appeal, Boucher now also attempts to morph his motion for directed verdict to include a motion for directed verdict based on the District Court's consideration of "inadmissible evidence." Boucher now asserts that to the extent the District Court denied his motion for directed verdict based on the Intoxilyzer test results, it was error as he now asserts the Intoxilyzer results were "inadmissible evidence." The problem for Boucher, of course, is that is not the motion for directed verdict he made at trial. As stated above, we will not consider issues raised for the first time on appeal as it is fundamentally unfair to fault a district court for failing to rule on an issue it never had the opportunity to consider. *Ramsey*, ¶ 16.

¶13    Finally, Boucher asserts the District Court abused its discretion when it failed to use his proposed jury instruction regarding actual physical control of a motor vehicle. Boucher proposed an instruction defining actual physical control and another instruction setting forth a non-comprehensive list of factors the jury should consider to determine if Boucher was in actual physical control of the vehicle—including but not limited to where the vehicle was located, the location of the ignition key (in the ignition or elsewhere), whether the

8

engine was running, where the vehicle was parked and how it got there, whether the vehicle was disabled, and how easily the vehicle's disability could be cured. The State proposed the pattern instruction of actual physical control be given. The District Court rejected Boucher's proposed instructions and gave the State's instruction. The District Court reasoned that the situation at hand did not involve the vehicle always being disabled such that the State's proposed instruction was more suited to the evidence presented.

¶14 Boucher asserts the State's instruction regarding actual physical control was inappropriate as it in part provided, "[a] motorist does not relinquish control over a vehicle simply because it is incapable of starting or moving." Boucher asserts this language was precluded by *State v. Sommers*, 2014 MT 315, 377 Mont. 203, 339 P.3d 65. The State contrarily asserts the District Court correctly determined this case to be distinguishable from *Sommers*. In *Sommers*, an officer came upon Sommers passed out over his steering wheel in the parking lot of a Town Pump. Sommers asserted he coasted into the lot after experiencing some type of mechanical failure and then proceeded to get intoxicated at a nearby bar while waiting for his ride to come pick him up. When the bar closed, Sommers elected to wait in his car and fell asleep. Sommers presented his vehicle could not move because of the mechanical problem. *Sommers*, ¶¶ 4-10. We determined the specific language, "[i]t does not matter that the vehicle is incapable of movement," prejudiced Sommers' substantial rights by preventing the jury from considering a valid defense. *Sommers*, ¶ 29.

¶15 We agree with the State that the instruction given here did not prevent the jury from considering Boucher's defense that he did not have actual physical control over the vehicle

because it was stuck. Boucher advanced this defense at trial. Unlike in *Sommers* though, there was no dispute Boucher was operating the vehicle when it became stuck and he made no claim of post-driving alcohol consumption. Under the evidence presented at trial, the jury instruction given by the District Court regarding actual physical control of the vehicle fully and fairly instructed the jury on the law applicable to the case. We find no abuse of discretion by the District Court.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE